WILLIAM PIERCE, Appellant, v. JOHN F. BURNS, Appellee.

(*October* 30, 1962.)

WOLCOTT and TERRY, J. J., and WRIGHT, Judge, sitting.

*Joseph Donald Craven* for appellant.

*Joseph T. Walsh* for appellee.

Supreme Court of the State of Delaware, No. 42, 1962.

WOLCOTT, J.:

This is an appeal by Pierce from a judgment entered on a jury's verdict against him in an action of slander brought by Burns.

The facts leading to the action are that Burns was a member of the United Brotherhood of Carpenters and Joiners of which Pierce, at the time of the incident complained of, was President.

On October 5, 1960, Burns, Assistant Business Manager of the Union, was charged by a fellow Union member, Shapoval, with having violated Section 55, Paragraphs A and B of the Union Constitution. No details of the specific act of Burns were given in the charge.

Section 55, Paragraphs A and B of the Union Constitution are as follows:

"Section 55 A. Any officer or member who becomes an habitual drunkard, or is guilty of improper conduct, or wrongs a fellow-member, or defrauds him, or commits an offense discreditable to the United Brotherhood, shall be fined, suspended or expelled.

"B. Any officer or member who endeavors to create dissension among the members or works against the interest and harmony of the United Brotherhood, or who advocates or encourages division of the funds or dissolution of any Local Union, or the separation of a Local Union from the United Brotherhood, or embezzles the funds, shall be expelled and forever debarred from membership in the United Brotherhood."

On October 27, 1960 a trial committee of the Union conducted a hearing on the charges. At that hearing it developed that the precise complaint of Shapoval against Burns was that, as Assistant Business Agent of the Union, he had permitted certain work to be done by others which should have been done by Union members. The committee found Burns guilty.

On November 2, 1960 there was a general meeting of the Union over which Pierce, as President, presided. The chairman of the trial committee read the charges as preferred by Shapoval, and announced that the committee had found Burns guilty. The chairman in his report to the meeting gave no details as to the precise offense of which Burns had been found guilty, nor of the evidence in support of the finding.

Section 56, Paragraph I of the Union Constitution provides that when a trial committee has reached a decision on charges against a Union member, that it shall at the next regular meeting of the Union submit a full report of the hearing "with their verdict and the evidence in writing." Section 56, Paragraph J provides that the Union meeting shall not debate or review the case except to fix a penalty. It further provides that when the penalty is fixed by the Constitution it shall be the duty of the presiding officer of the meeting to impose such penalty.

Following the announcement of the committee's report Pierce read in full both of the sections of the Constitution set forth in the charges upon which Burns had been found guilty. Thereupon, Pierce expelled Burns from the Union in accordance with the penalty prescribed by the Union Constitution for the violation of the particular sections.

There is a conflict in the testimony as to whether or not Pierce gratuitously read the two quoted sections of the Union Constitution in full, or did so in response to a request to that effect from the floor. Witnesses for the plaintiff testify that no request was made, while witnesses for Pierce testified that such a request had been made.

There is also a conflict in the testimony as to the relationship between Pierce and Burns. It appears, however, that they were members of opposing factions of the Union, and had disagreed and clashed on many previous occasions. There is testimony that Burns had requested the attendance of two policemen at the Union meeting on the supposition that there would be difficulties. Pierce resented this and arranged that the policemen leave. There is testimony to the effect that, due to his resentment, Pierce threatened to "get" Burns.

In point of fact, Burns had been guilty of no act proscribed by Sections 55 A and B of the Union Constitution except, apparently, an act against the interest and harmony of

the Union in violation of Paragraph B. There was no evidence presented to the committee of acts in violation of Section 55 A. Burns was not in fact an habitual drunkard, but was a teetotaler; he had not wronged or defrauded a fellow Union member, and had not embezzled any funds of the Union, although in his capacity as Assistant Business Manager of the Union he, on occasion, handled Union funds.

The theory of Burns' case against Pierce is that Pierce maliciously, and knowing it to be false, had deliberately read the text of Section 55, Paragraph A in order to make it appear that Burns had been found guilty of the offenses and crimes set forth in that paragraph, although he, Pierce, knew that Burns was innocent of such charges. The trial judge permitted the issue to go to the jury.

Pierce appeals the denial of his motion for a directed vcerdict, and also the denial of a prior motion made by him to dismiss the complaint for failure to state a cause of action. While the denial of two motions is brought before us, in reality we have only one question, that is, was there sufficient evidence to warrant the jury finding that Pierce slandered Burns? The answer to this basic question automatically governs the propriety of the denial of his motions.

Slander is spoken defamation, and differs from libel only in this respect. In order to be actionable spoken defamation must accuse another of having committed a punishable crime, in which event it is actionable *per se,* or tend to harm his reputation so as to lower him in the estimation of the community in which he lives. *Restatement of Torts,* § 559; *Klein v. Sunbeam Corporation,* 8 Terry 526, 94 A. 2d 385; *Newark Trust Co. v. Bruwer,* 1 Storey 188, 141 A. 2d 615. We do not understand the parties before us to differ upon this statement of the law.

Not all slander, however, is actionable. Some spoken defamation may fall within a class which the law terms

privileged, and for which no damages may be recovered. Privileged defamation may be either absolute or conditional. In this case we are not concerned with absolute privilege which embraces ordinary spoken defamation made in judicial or legislative proceedings, etc.

 Pierce claims, however, the benefit of the second class of privileged communications. This class is conditional or qualified privilege. Such privilege extends to communications made between persons who have a common interest for the protection of which the allegedly defamation statements are made. *Prosser on Torts* (2d Ed.), § 95; *Restatement of Torts*, § 593.

██ It seems apparent that the common interest of members of religious, fraternal, charitable or other non-profit associations is such as to afford the protection of qualified privilege to communications between them in furtherance of their common purpose or interest. *Restatement of Torts*, § 596(d); 33 Am. Jur., Libel and Slander, § 132. While defamatory statements in some cases made in furtherance of the common interests of members of a non-profit organization may receive the benefit of qualified privilege, that benefit may also be lost or forfeited if it is abused by excessive or improper publication, by the use of the occasion for a purpose not embraced within the privilege, or by the making of a statement which the speaker knows is false. *Prosser on Torts*, § 95, p. 652; *Restatement of Torts*, §§ 599, 600, 605.

The case before us, therefore, presents squarely whether or not the action of Pierce in reading in full the sections of the Union Constitution which allegedly had been violated, and of which the trial committee had found Burns guilty, containing as they did criminal offenses or degrading offenses of which Burns was neither charged nor guilty, constituted an abuse of the qualified privilege which he possessed as the President of the Union presiding over its regular meeting to such an extent as to forfeit the privilege.

We think the jury could have found from the evidence presented to it that there was bad feeling between Pierce and Burns, and that Pierce threatened prior to the meeting to retaliate upon Burns for what he considered an unauthorized and unjust act. From Pierce's own testimony elicited in cross-examination, it appears that he knew that Burns was a teetotaler, and had embezzled no Union funds. As to whether or not Pierce gratuitously or on request read the sections, the jury could have concluded from the testimony that Pierce's action in this respect was gratuitous.

Pierce seems to argue that it is the function of the court to determine whether or not qualified privilege has been abused, and that, taking the record as a whole, no abuse had been proven. But this, we think, is not the function of the court. As to whether or not an occasion is privileged in the sense that no slander can be committed by an exchange of communications, it is the function of the court to determine this as a matter of law. As to whether or not, however, the statements complained of are made maliciously, that is, with actual ill will toward the object of the statement, or with an improper motive by the person making the statement, the jury is the proper tribunal to determine that fact. *Harper and James, Law of Torts*, § 5.29; *Restatement of Torts*, § 619 (2).

As a matter of law it was the function of the trial judge to determine, as he did, that statements made at the regular meeting of the Union were qualifiedly privileged if in furtherance of the *common interest of the Union*. However, in view of the dispute of fact with respect to the abuse of the privilege resulting in its forfeiture, it became the function of the jury to resolve that contested factual issue. The jury found this ultimate fact against Pierce.

We therefore affirm the judgment below.