Esther **GONZALEZ**, Frances **Fish**, and Audrey **Charsha**, Plaintiffs,

v.

**AVON PRODUCTS, INC.,** Defendant.

**Civ. A. No. 84–248–JLL.**

United States District Court, D. Delaware.

June 4, 1985.

---

Jacob Kreshtool, Wilmington, Del., for plaintiffs.

Wayne N. Elliott of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This libel suit is presently before the Court[1] on the defendant's motion for summary judgment. (Docket Item ["D.I."] 12.) Because there is yet an issue of material fact to be resolved, the motion must be denied.

## I. BACKGROUND

This litigation arises from a series of events which took place in April of 1983 at the defendant's ("Avon") plant in Newark, Delaware. At that time, the three plaintiffs were employed by Avon in the Returned Goods or Merchandise Control Department at the plant. (D.I. 24 at 3, A–3.) On April 18, an Avon security guard spotted an employee from the Returned Goods Department attempting to steal a cookbook. (D.I. 15A at A–20 to A–21, A–30.) That employee, identified as Helen Goodine (*id.*), was subsequently interrogated on three occasions, first on April 21 by Donald Graham, a Safety and Security Section Manager (*id.* at A–19, A–27), again on the following day by James Willcox, the General Manager of the Newark plant (*id.* at A–29, A–30), and then again by Graham on the following Monday. (*Id.* at A–21 to A–22.) On these occasions Goodine stated that theft was a common occurrence in the Returned Goods Department (*id.* at A–28, A–30), and at her meeting with Willcox and her second meeting with Graham she identified the plaintiffs as having stolen a variety of items from Avon. (*Id.* at A–30 to A–31.) Goodine's allegations were corroborated by another employee of the Returned Goods Department who detailed numerous instances of larceny supposedly perpetrated by the plaintiffs. (*Id.* at A–31 to A–33.) Managers at the Newark plant accepted these statements as confirmation of a theft problem they had long suspected of being rooted in the Returned Goods Department. (*See id.* at A–29 to A–30.) On April 25, Graham and an employee from Avon's New York office investigated the allegations by interviewing Newark plant employees, including the plaintiffs. (*Id.* at A–33.) The

following day, the plaintiffs were "suspended for cause." (*Id.*) Two days later, on April 28, the plaintiffs and five other individuals were "terminated for cause." (*Id.* at A–34, A–35a.) This decision was based on what Willcox called a "very thorough investigation." (*Id.* at A–34.)

That same day, Willcox called a special meeting of all plant employees, some 900–1000 people (*id.* at A–34 to A–35; D.I. 24 at 4), and read to them a prepared statement[2] that referred to "5 regular employees and 3 reserves that ... [were] terminated for cause," (D.I. 15A at A–35a) and spoke in general terms about a violation of trust, the importance of contributing to and not taking away from the company, and the need for random searches as a "reminder to stop and think before doing something that will have lifelong implications." (*Id.* at A–35b to A–35c.)

Approximately one year later, the plaintiffs filed this suit, claiming they were falsely and in bad faith defamed by Willcox's speech and that they have, as a consequence, suffered injury to their reputations, emotional distress, and financial losses. (D.I. 1.)

## II. LAW

### A. *Summary Judgment*

The well-established law governing the Court's consideration of Avon's motion provides that summary judgment shall be rendered if the record before the Court shows that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). The burden of demonstrating that this standard has been met is upon the moving party, and the evidence and inferences from it are to be construed in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

---

1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

2. The full text of Willcox's remarks are appended to this opinion. Spelling abbreviations and

punctuation omissions have been corrected; otherwise the text is as Willcox had prepared it and as he claims he delivered it. (D.I. 15A at A–35.)

**1558**

### B. *Libel*

It is undisputed that Delaware law controls this diversity suit. Delaware courts have frequently cited two authoritative sources on the common law of defamation: Professor Prosser's hornbook on the Law of Torts ("Prosser") and the Restatement of the Law of Torts ("Restatement"). *See, e.g., Andres v. Williams*, Del.Supr., 405 A.2d 121, 122–23 (1979) (citing with approval *Restatement* §§ 559, 762, and *Prosser* § 111); *Spence v. Funk*, Del.Supr., 396 A.2d 967, 969–71 (1978) (citing with approval *Restatement* §§ 559, 569, 570, and *Prosser* §§ 111, 112); *Pierce v. Burns*, 55 Del. 166, 185 A.2d 477, 479 (1962) (citing with approval *Restatement* §§ 559, 593, 596(d), 599, 600, 605, and *Prosser* § 95). Because the parties have not cited and the Court has not found Delaware precedent for all of the points of law at issue in this case, the Court must in part predict the law of Delaware; the Court believes Delaware would again rely on the law as described in *Prosser* and the *Restatement* to resolve issues that its own courts have not already addressed. *Cf. Avins v. White*, 627 F.2d 637, 642 (3d Cir.), *cert. denied*, 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980).

 Among the matters the Delaware courts have addressed is the distinction between libel and slander, and although the parties in their briefing have apparently assumed without discussion that the alleged defamation is libel, it is worth noting why the speech made to the Avon employees should be considered under the law of libel rather than the law of slander. The scope of liability for libel is broader than it is for slander. *Spence v. Funk*, Del.Supr., 396 A.2d 967, 970 (1978). "This is to say, that while all slanderous statements would be libelous if written, not all libelous statements would be slanderous if spoken." *Id.* In this case, the alleged defamation was written down (*see* D.I. 15A at A–34 to A–35), and so is properly considered under the broader liability standard of libel, even though it was communicated to the Avon employees by the spoken word, which is ordinarily the hallmark of slander. *See Restatement* § 568, comment e.[3]

 The elements of a cause of action for libel are as follows: (1) a false statement (2) which is defamatory, (3) which is of and concerning the plaintiffs, (4) which was made in an unprivileged publication to a third party, and (5) the making of which was a consequence of fault amounting at least to negligence on the publisher's part. *See Restatement* §§ 558, 569;[4] *cf. Prosser* § 113 at 802.[5] Avon has, for purposes of this summary judgment motion, conceded the existence of elements one through three. (*See* D.I. 15 at 18; D.I. 27 at 8–9.) Avon argues, however, that it is entitled to summary judgment because, as a matter of law, its employee Willcox was protected by a qualified privilege in making the remarks he did (D.I. 15 at 9–11), and because no fault on Willcox's part resulted in forfeiture of that privilege.[6] (*Id.* at 11–16.) But Avon has ignored an issue of fact concerning Willcox's good faith in saying what he did in his speech. To understand the materiality of that issue, a brief discussion of the law of privilege and abuse of privilege is necessary.

---

**3.** This and following references to the *Restatement* are to the Restatement (Second) of Torts (1977).

**4.** Section 569 of the *Restatement* explains that all libel is actionable *per se* and that there is accordingly no need to show special damages in a suit for libel as there is in a suit for slander. This rule has also been explicitly made the law of Delaware; in *Spence v. Funk*, Del.Supr., 396 A.2d 967, 971 (1978), the Delaware Supreme Court said, "any libel ... is actionable without special damages, whether the defamatory nature is apparent on the face of the statement or

only by reference to extrinsic facts." That very clear statement demolishes the argument Avon makes in Section III of its opening brief and thus makes any discussion of that argument unnecessary.

**5.** This and following references to *Prosser* in this opinion are to the new 5th edition, Prosser & Keeton, *The Law of Torts* (1984).

**6.** It is undisputed that if Willcox is liable to the plaintiffs for libel, then his employer, Avon, is liable.

■ The privilege of which Avon claims the benefit is that expressed in section 596 of the *Restatement:*

An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

This privilege has been explicitly adopted in Delaware, *see Pierce v. Burns*, 55 Del. 166, 185 A.2d 477, 479 (1962): *Battista v. Chrysler Corp.*, Del.Super., 454 A.2d 286, 290–91 (1982), and under Delaware law, the existence of the privilege in a given set of circumstances is a matter to be determined by the Court. *Pierce v. Burns, supra,* 185 A.2d at 480. Thus the Court must decide whether this "common interest" privilege applies to the speech Willcox made to Avon's assembled Newark plant employees.

Avon asserts that the common interest of management and labor in operating a successful business clearly qualifies communications in furtherance of that goal as being privileged (D.I. 15 at 10–11), and Delaware precedent appears to bear this out: "This [common interest] qualified privilege is particularly germane to the employer-employee relationship...." *Battista, supra,* 454 A.2d at 291. *Cf. Burr v. Atlantic Aviation Corp.*, Del.Supr., 348 A.2d 179 (1975). Although they failed to brief the issue, the plaintiffs contested at oral argument the applicability of privilege to this case. Their arguments, however, centered on the number of employees who heard the publication and the manner in which the publication was made, concerns which are more properly classified with considerations of abuse of privilege. The Court agrees with Avon that the common interest privilege does apply to this case. The dispositive question thus becomes whether Willcox abused that privilege.

■ A qualified privilege will be deemed abused and hence forfeited if there has been "[1] excessive or improper publi-cation, ... [2] the use of the occasion for a purpose not embraced within the privilege, ... [3] the making of a statement which the speaker knows is false," *Pierce v. Burns, supra,* 185 A.2d at 479, "[4] express malice ... [, 5] any desire to cause harm," *Short v. News-Journal Co.*, Del.Super., 205 A.2d 6, 8 (1965), or [6] bad faith in the exercise of the privilege. *Battista, supra,* 454 A.2d at 291. These types of abuse of privilege, particularly the last four, are closely related and involve some inquiry into the mind of the publisher. Such an investigation into subjective intent is ordinarily not a matter for summary judgment. *See Look Enterprises S.A. v. Look, Inc.*, 596 F.Supp. 774, 779 (D.Del. 1984). This is surely why Delaware has traditionally reserved the question of abuse of privilege for jury consideration. *Pierce v. Burns, supra,* 185 A.2d at 480.

The plaintiffs claim that Willcox made his speech in bad faith, knowing it to be false (D.I. 1), but Willcox has sworn that he was motivated by his managerial judgment that, "some official statement addressing the terminations and Avon policy in general was necessary in order to ensure that the incident would not be blown out of proportion so as to eventually cause undue problems at the plant." (D.I. 15 at A–35.)

■ When faced with an affidavit supporting a motion for summary judgment, an adverse party may not rest upon the mere allegations or denials of his pleading to rebut the affiant's testimony. Fed.R. Civ.P. 56(e). There must be before the court some contrary affidavit or product of discovery if the adverse party wishes to raise a material issue of fact and stave off summary judgment. *Id.* In this case, the affidavit of Mr. Rowe, submitted on behalf of the plaintiffs, alleges that in his experience Avon had discharged many employees for theft and had followed a standard practice in notifying the work force of the company's justifications in those cases. (D.I. 24 at A–4.) The standard procedure called for each supervisor to communicate the text of a company statement to the employees under his immediate supervi-

sion. (*Id.*) The meeting on April 28, 1983, however, according to Rowe was an unprecedented assemblage of all employees to hear the General Manager charge terminated employees with theft. (*Id.*) Furthermore, at oral argument the plaintiffs pressed the notion that Willcox's assertions in his speech to the effect that employees could not be fired from Avon simply because "someone else says something bad about them[,]" and that "no stones were left unturned" in investigating the thefts allegedly committed by the plaintiffs were assertions made in bad faith and with knowledge of their falsity, considering Willcox's deposition testimony (*see* D.I. 29 at 46–48) that the plaintiffs had been fired on the basis of reports by fellow employees.

Taking every inference from these submissions in the light most favorable to the plaintiff, as is required, *Adickes, supra,* 398 U.S. at 157, 90 S.Ct. at 1608, the Court must hold that a material question of fact exists about Willcox's good faith in making the statements he did in his speech. The Court cannot say as a matter of law that a juror would be unreasonable in concluding that Willcox acted in bad faith by implying that something besides the testimony of fellow employees lay behind the plaintiffs' discharge, or by concluding that the departure from standard practice in explaining terminations was motivated by some bad faith. Granted, such conclusions would be strained, but the United States Court of Appeals for the Third Circuit, whose opinions bind this Court, has consistently required that the standards for summary judgment be strictly construed and applied. *See, e.g., Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir. 1981); *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

If a jury were to conclude that Willcox had acted in bad faith, the last two elements of a cause of action for libel would be satisfied: the publication to third parties would have been unprivileged and it would

have been a consequence of some fault on the publisher's part. Given Avon's concession, for purposes of this motion, of the first three elements of a libel suit, and the possibility of a finding for the plaintiffs on the last two elements, summary judgment cannot be granted for the defendant.

An order will be entered in accordance with this opinion.

## APPENDIX

Brought you together—recent events—want to make sure all of you fully understand what has occurred.

We have just notified 5 regular employees and 3 reserves that they have been terminated for cause.

This action is the result of a very thorough investigation that we conducted earlier this week.

A decision to terminate an individual's employment at Avon, as you know, is never made in haste.

We have given everyone involved the full benefit of the doubt as well as every opportunity to speak up on their own behalf.

Although our decision is a difficult one, we feel it is just and that we have been fair.

As I've walked through the facility this week, many of you have asked me questions regarding this issue.

A popular question has been: "Why suspend these folks; why not just fire them?" Answer I've given: We wanted to insure that our investigation left no room for doubt and because of the seniority of the employees involved, our officers in New York wanted the same assurances that no stones were left unturned. That has always been our philosophy as a company and will continue to be in the future.

Another concern I've sensed is "can someone get fired if someone else says something bad about them?"

Again, I hope I've answered that, but in addition let me commit to you that no one

APPENDIX—Continued

can be terminated from this company without good reason. We take these situations very seriously. It doesn't just happen in this case or any other case. This has been Avon's policy (10 yr. rule). I think those of you who work here already know these things, but I offer you my personal reassurance that no one will be terminated based on hearsay.

The question remaining for all of us today is "where do we go from here?"

I've always considered Avon an open and understanding company. Our whole business has been built on trust. Trust of our representatives and trust of our employees. When we see people violate that trust, I think we are genuinely shocked and disappointed. In order to run an organization this size we must have rules and regulations.

One of those regulations is random search. The biggest reason for random search is the reminder to stop and think before doing something that will have lifelong implications.

What I expect is that all of you take it upon yourselves to support our regulations and follow them in every way. I trust all of you will continue to do so as long as you allow it.

One employee mentioned yesterday that the whole experience could raise the issue of job security at Avon. Let me answer by telling you what job security means to me. It means doing everything we, as employees, can do to contribute to the growth and success of our business. It means doing nothing that takes away or detracts from our company.

In the past 2 or 3 years all of you have seen layoffs and plant closings in the Newark area—this has not happened at Avon because our business continues to grow and expand. We can continue to do that in the future with the support and dedication of people like you.

Supporting the company will guarantee all of us everything we want from Avon, both as individuals and as a group.