Esther GONZALEZ, Frances Fish, and Audrey Charsha, Plaintiffs,

v.

AVON PRODUCTS, INC., Defendant.

Civ. A. No. 84–248–JLL.

United States District Court, D. Delaware.

Dec. 1, 1986.

Jacob Kreshtool, Wilmington, Del., for plaintiffs.

Wayne N. Elliott, of Prickett, Jones, Elliott, Kristol and Schnee, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

Plaintiffs Esther Gonzalez, Frances Fish, and Audrey Charsha ("plaintiffs") instituted this diversity action claiming that defendant Avon Products, Inc. ("Avon"), through its General Manager, James Wilcox ("Wilcox"), defamed plaintiffs during a speech which he delivered to some 900 employees at Avon's plant in Newark, Delaware. (*See* Docket Item ["D.I."] 1.) The case was tried before a jury. After a four-day trial and nearly a day and a half of deliberation, the jury informed the Court that it was unable to reach a unanimous verdict. (*See* D.I. 94 at 2.) Thereupon the Court declared a mistrial and dismissed the jury. (*See id.*) Presently before the Court is Avon's motion for a judgment notwithstanding the jury's failure to agree contending that there was no evidence upon which a reasonable jury could have concluded that Wilcox abused the qualified privilege applicable in this case. (D.I. 85.) For the reasons stated below, this Court will grant Avon's motion for judgment notwithstanding the jury's failure to agree.

## BACKGROUND

Because a decision on this motion largely depends on the particular facts of this case, a discussion of the evidence presented at trial is necessary. This litigation arose out of events which took place at Avon's Newark plant during the spring of 1983. Plaintiffs were all employed at the Newark plant in a department known as Return Goods. (*See* D.I. 86 at B–17, 45, 68.) The main function of employees in Return Goods was to receive and process defective or unwanted Avon products returned by Avon salespersons or customers. (*See* D.I. 90 at A–5.)

On April 18, 1983, Helen Goodine ("Goodine"), another employee in Return Goods, was intercepted by a security guard as she attempted to leave the Newark plant with a cookbook belonging to Avon. (*See* D.I. 92 at F–5.) Goodine left the cookbook with the guard, offering no explanation for having taken it. (*See id.* at F–6.) As a result of this incident, Goodine was suspended and eventually terminated from Avon. (*See* D.I. 90 at A–8.) Before her termination, Goodine was questioned on several occasions by Wilcox and Don Graham ("Graham"), head of the Newark plant's security force. (*See* D.I. 92 at F–6 to 7.) Goodine informed Wilcox and Graham that the

cookbook incident was far from an isolated occurrence at Avon. (*See Id.* at F–7.) In fact, Goodine told the investigators that employee-theft was common in the Return Goods Department. (*See id.*)

After hearing Goodine's initial accusations, Wilcox arranged to meet with Rosewitha Grady ("Grady"), another employee in Return Goods. (*See* D.I. 91 at D–68 to 69.) Grady had previously approached Wilcox regarding what she termed the security problem in Return Goods. (*See id.* at D–66.) Unbeknownst to Wilcox at the time and before his arrival as the General Manager of Avon's Newark plant, it had also been Grady who placed an anonymous note in the plant suggestion box requesting that something be done about the stealing in Return Goods. (*See id.* at D–62 to 63.) During their meeting, Grady told Wilcox that there was a tremendous amount of thievery going on in Return Goods. (*See id.* at D–69.) Grady told Wilcox details concerning numerous instances of theft, implicating the plaintiffs in the stealing. (*See id.* at D–52 to 62, 69.) In a subsequent meeting with Wilcox, Goodine also implicated the plaintiffs in the thievery. (*See* D.I. 92 at F–33 to 34.) Goodine and Grady's accounts were then corroborated by Elsie Isaac, a retired Avon employee who did not work in Return Goods but claimed to have seen, from her position as a machine operator, the plaintiffs steal. (*See id.* at F–47 to 49.)

After hearing from Grady and Goodine, Wilcox decided that the problem was too big for him to handle alone and contacted Avon's New York office for assistance. (*See* D.I. 90 at A–48.) Avon sent its corporate security chief Tom Ruane ("Ruane") to help Wilcox investigate the thefts. (*See id.* at A–48 to 49.) Ruane arrived on April 25 and immediately began questioning Grady, Goodine, and other employees implicated in the thievery. (*See* D.I. 89 at G–4.) Based on Ruane's investigation, and his own meetings with Grady, Goodine, and Isaac, Wilcox decided to suspend and eventually terminate eight employees in the Return Goods department, including the three plaintiffs. (*See id.* at G–40.)

The termination of eight long-term employees caused quite a stir among other personnel at the Newark plant. (*See id.* at G–40 to 41.) Wilcox had arrived and became General Manager at the Newark plant only six weeks before the terminations occurred. (*See* D.I. 90 at A–6 to 7.) This fact, combined with the gravity of the situation, led Wilcox to the conclusion that he had to take positive measures to allay fears and address employee concerns regarding the terminations. (*See id.* at A–64 to 65.) Thus, sometime soon after the terminations, Wilcox called a general meeting of all plant personnel and read a prepared speech[1] concerning the terminations and their effect on the plant's future.[2] (*See* D.I. 89 at G–40 to 47.) Plaintiffs contend that Wilcox' speech defamed them and filed this action seeking damages from Avon.

## ANALYSIS

Avon has moved for a judgment notwithstanding the jury's failure to agree under Federal Rule of Civil Procedure 50(b). Avon has complied with the requirements of Rule 50(b) by renewing its motion for a directed verdict at the close of all trial evidence and filing the present motion within the applicable time period. Fed.R. Civ.P. 50(b).

The jury's failure to reach a verdict in this case does not bar Avon's motion. A party may seek such motion under Rule 50(b) within ten days after a jury is discharged for failing to return a unanimous

---

**1.** There is some dispute as to the exact date the speech was delivered. The plaintiffs contend that Wilcox delivered the speech on April 28, the day the plaintiffs were terminated. (*See* D.I. 86 at B–79.) Avon believes Wilcox delivered the speech sometime around May 5, a week after the terminations. (*See* D.I. 89 at G–55.) This issue was never resolved. However, it is immaterial when the speech was made for the purpose of the present motion. The Court will assume the speech was made on or about April 28th as it stated in its instructions to the jury. (*See* D.I. 93 at H–7.)

**2.** A copy of Wilcox' speech is appended to the earlier opinion filed in this action. 609 F.Supp. 1555 at 1560–1.

verdict. Fed.R.Civ.P. 50(b). *See, e.g., Noonan v. Midland Capital Corp.,* 453 F.2d 459, 462 (2d Cir.1972); *see also* 9 C.A. Wright & A.R. Miller, *Federal Practice and Procedures,* § 2537 (1971).

A court deciding a motion for a judgment notwithstanding the jury's failure to agree should use the same standard applicable to a JNOV motion. 9 C.A. Wright & A.R. Miller, *supra,* at § 2537. The Second Circuit phrased this standard effectively:

> Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached.

*Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970). The decisions in this district are in agreement: "In order for a court to grant a motion for a judgment NOV, the evidence must be such that reasonable persons could not have reached the verdict returned by the jury." *Tyler v. Board of Education of New Castle County,* 519 F.Supp. 834, 835 (D.Del.1981); *see also Ambrose v. Wheatley,* 321 F.Supp. 1220, 1222 (D.Del.1971). Thus this Court must examine the evidence before the jury in this case to determine if reasonable persons could have reached but one verdict.

Avon asserts there was no evidence presented at trial from which reasonable persons could have concluded that Wilcox abused the qualified privilege applicable to his speech. (*See* D.I. 84 at 5.) As Avon correctly notes, this Court earlier held that Wilcox' speech was protected by the qualified common interest privilege and thus was not actionable unless Wilcox abused that privilege. *Gonzalez v. Avon Products, Inc.,* 609 F.Supp. 1555 (D.Del.1985). As the Court pointed out in that opinion, Delaware courts recognize six ways in which a qualified privilege can be abused: ▆ excessive or improper publication, ... ▆ the use of the occasion for a purpose not embraced within the privilege ... [3] the making of a statement which the speaker knows is false, ... [4] express

malice ... [5] any desire to cause harm ... or [6] bad faith in the exercise of the privilege.

*Id.* at 1559.

The plaintiffs focus on the elements of known falsity of the statement, malice, spite and ill will, claiming that the evidence was such that a reasonable person could have concluded that Wilcox abused the privilege either by knowingly making false statements or by making the statements with spite or ill will. (*See* D.I. 87 at 5.) In response, Avon contends that there was no evidence presented at trial upon which reasonable jurors could have based either finding. (*See* D.I. 84.)

After a thorough review of the trial transcripts, this Court must agree with Avon. Cognizant of the fact that courts should not lightly take issues of fact from a jury, *see Look Enterprise S.A. v. Look Inc.,* 596 F.Supp. 774, 779 (D.Del.1984), this Court denied Avon's motion for summary judgment and two requests for a directed verdict, on this issue. However, plaintiffs have now had a full opportunity to present their case at trial and have failed to produce any evidence showing that Wilcox abused the privilege.

Plaintiffs offer two arguments in opposition to Avon's motion. First, plaintiffs contend that they presented sufficient evidence from which reasonable persons could have concluded that Wilcox' speech contained statements known to him to be false. (*See* D.I. 87 at 5.) Specifically, plaintiffs maintain that Wilcox incorrectly assured the Newark workers that no employee at Avon would be fired based on hearsay or what another employee said bad about them. (*See id.*) Plaintiffs claim that this statement refers to them and that Wilcox admitted its inaccuracy when he testified that the plaintiffs were fired based solely on the statements of other employees.

Wilcox did base his decision to terminate the plaintiffs mainly on the statements of Grady, Goodine, and Isaac. However, this does little to support plaintiffs' position. While this Court may not express any opinion as to the truthfulness of Grady, Goo-

dine, and Isaac's accounts, it is uncontraverted that all three employees informed Wilcox they had personally observed the plaintiffs steal. (*See* D.I. 91 at D–53, 69; D.I. 92 at F–2 to 5, 7, 47, 49.) Statements of this sort do not constitute hearsay. Eyewitness testimony certainly is not hearsay in the legal sense. Further, in layman's terms, most probably intended by Wilcox, the term "hearsay" is understood to mean rumor or gossip. American College Dictionary 558. Wilcox' decision was not based on a rumor but on three detailed accounts of specific instances of theft.

Neither were plaintiffs terminated because other employees said something bad about them. Wilcox testified that he made that statement directly in response to an employee question concerning whether anyone could be fired based on a story made up by another employee. (*See* D.I. 90 at A–69 to 70.) Plaintiffs were not terminated based on rumor or a story made up by an employee. As already stated, Grady, Goodine, and Isaac recounted in detail many instances in which they personally observed the plaintiffs steal. Wilcox and Ruane then weighed the veracity of these statements, checking them against other factors, including the accounts of the eight employees implicated in the thefts. (*See* D.I. 89 at G–4 to 9.)

Wilcox based his decision to terminate the plaintiffs on additional evidence as well. Wilcox testified that management at Newark had been concerned for some time before this incident that merchandise was disappearing from Return Goods. (*See* D.I. 90 at A–43 to 45.) Further, during Ruane's investigation, one of the plaintiffs admitted taking a spatula. (*See id.* at A–46.)

Based on the above, this Court finds the evidence such that a reasonable person could not have concluded that Wilcox knowingly made a false statement when he told the Newark employees that no one would be terminated based on hearsay or what others said bad about them.

Plaintiffs' second argument is that reasonable persons could have concluded that Wilcox delivered the speech with ill will and spite. (*See* D.I. 87 at 6.) A careful review of the trial transcripts reveals that there is no evidence upon which reasonable jurors could have based this conclusion. Wilcox' uncontraverted testimony was that he delivered the speech in order to quell employee fears about the Newark plant's future. (*See* D.I. 89 at G–40 to 47.) The speech only concerned the plaintiffs as far as the plaintiffs' termination related to the job security of the remaining Avon employees. (*See id.*)

Plaintiffs assert that Wilcox' statements during trial regarding the "unsavory" reputation of Charles Roper, an Avon guard, was sufficient evidence upon which reasonable persons could have based a finding of ill will. (*See* D.I. 87 at 6.) That conclusion is unsupported by any evidence. Wilcox based his characterization of Roper on information conveyed to him after an investigation and not on his personal beliefs. (*See* D.I. 90 at A–54.) Moreover, any opinions Wilcox has of Roper have little bearing on his feelings toward the plaintiffs or his motivations for delivering the speech.

## CONCLUSION

Since Wilcox' speech was protected by the qualified common interest privilege, plaintiffs could not prevail absent a finding that Wilcox abused that privilege. Insofar as there was no evidence upon which reasonable persons could conclude that Wilcox abused the privilege, this Court will grant Avon's motion for a judgment notwithstanding the jury's failure to agree.

An order will be entered in accordance with this memorandum opinion.