Frederic M. STINER, Jr., Plaintiff,

v.

The UNIVERSITY OF DELAWARE, Kent St. Pierre, the American Association of University Professors, Gerald M. Turkel, and David L. Colton, Defendants.

No. CIV.A.02–312–SLR.

United States District Court,
D. Delaware.

Jan. 16, 2003.

Laurence V. Cronin, Esquire of Smith, Katzenstein & Furlow, LLP, Wilmington, DE, for Plaintiff. Of Counsel: Mark B. Frost, Esquire of Frost & Zeff, Philadelphia, PA.

Rebecca L. Butcher, Esquire of Klett, Rooney, Lieber & Schorling, Wilmington, DE, for Defendants The University of Delaware and Kent St. Pierre. Of Counsel: James N. Boudreau, Esquire and David A. Hitchens, Esquire of Morgan, Lewis & Bockius, LLP, Philadelphia, PA.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

On April 29, 2002, plaintiff Frederic M. Stiner, Jr. filed this action against defendants the University of Delaware ("the University"), Kent St. Pierre ("St.Pierre"), The American Association of University Professors ("AAUP"), Gerald M. Turkel ("Turkel") and David L. Colton ("Colton"), alleging (1) violation of 42 U.S.C. § 1983 and the First Amendment by the University and St. Pierre; (2) retaliation by the University; (3) violations of due process under the Fourteenth Amendment by the University and St. Pierre; (4) breach of fiduciary relations by AAUP, Turkel and Colton; (5) self-dealing by AAUP, Turkel and Colton; (6) breach of contract by all defendants; and (7) defamation by the University and St. Pierre. (D.I.1) This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Presently before the court is defendant University and

defendant St. Pierre's (collectively "University Defendants") motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and plaintiff's motion for leave to file a sur reply brief. (D.I.5, 13)

## II. BACKGROUND

The facts recited below, to the extent they are relevant to defendants' motion to dismiss, are set forth in the light most favorable to plaintiff. Plaintiff began his career at the University of Delaware in 1982 as an associate professor of accounting. Plaintiff ultimately became a tenured professor and a member of the AAUP, and was covered by the provisions of the AAUP's collective bargaining agreement ("CBA") with the University. Prior to 1997, the University rated plaintiff's record in teaching, research, and service at or above the applicable criteria.

In January 1997, Purnell Hall, the building in which the accounting department's offices were located, underwent renovation. As a result of the renovation, faculty were reassigned offices. In order to distribute the newly redesigned offices among the faculty, defendant St. Pierre, then Chair of the Accounting Department, devised an "office auction." Under this auction, faculty members would bid money for the office of their choice, with the office going to the highest bidder. The money generated from the auction was to go to the Department's discretionary fund, which St. Pierre controlled in his capacity as Department Chair.

In February and March of 1997, plaintiff complained to St. Pierre that he felt it was improper to conduct an office auction in which the proceeds would go to the discretionary fund controlled by St. Pierre. When St. Pierre ignored plaintiff's complaints, plaintiff brought the issue to the attention of Dr. Leon Campbell, the AAUP's Contract Maintenance Officer,

and Maxine Colm, the University's Vice President for Administration. Dr. Campbell and Ms. Colm then met with College Dean Dana Johnson to discuss the auction. As a result of the meeting, the auction was cancelled and the offices were assigned in another fashion.

In June of 1997, St. Pierre evaluated plaintiff's performance for the 1996–1997 time period. Plaintiff was rated below criteria in teaching, at criteria in research, and above criteria in service. Upon receipt of the evaluation, plaintiff requested a meeting with St. Pierre to discuss the below criteria rating. St. Pierre ultimately agreed to meet with plaintiff, but persisted in keeping his original evaluation of his performance.

In September 1997, plaintiff forwarded a complaint regarding his evaluation to Dean Johnson appealing the decision. The appeal was not considered by the University. In April 1998, plaintiff received his evaluation for the 1997–1998 period. In this evaluation, St. Pierre rated plaintiff below criteria for teaching, at criteria for research, and at criteria for service. In response to the second below criteria evaluation, plaintiff filed a grievance with the AAUP claiming that St. Pierre failed to follow University Policy, treated plaintiff arbitrarily, and evaluated him under a criteria for which no other faculty was evaluated. As a result of the grievance, the AAUP reached a settlement with St. Pierre by which he agreed to provide the criteria used for evaluations.

At a November 1998 faculty meeting, plaintiff questioned St. Pierre about the evaluation criteria. In response, St. Pierre allegedly revealed to the faculty at the meeting that plaintiff received a below criteria rating for teaching and permitted discussion by the faculty of plaintiff's teaching. As a result of St. Pierre allegedly disclosing this information at the faculty

meeting, plaintiff filed a complaint with the Faculty Welfare and Privileges Committee ("FWPC").

In February 1999, the FWPC found St. Pierre's conduct actionable and required him to write a letter of apology to plaintiff. As a result of the FWPC complaint and his previous complaints, plaintiff alleges that St. Pierre began retaliating against him. Plaintiff states that he was removed as Chair of the Department of Promotion and Tenure by St. Pierre and relegated to teaching freshman level courses normally taught by much more junior faculty.

Plaintiff then received his evaluations for the 1998–1999 year. In this evaluation, St. Pierre rated plaintiff's teaching at criteria. However, for the 1999–2000 year, plaintiff again received a below criteria rating in teaching. In August 2000, the University submitted an Application for Reaffirmation by the Association to Advance Collegiate Schools of Business ("AACSB"). In the application, plaintiff was listed as academically qualified with a teaching load of three classes per semester. In February 2001, in response to AACSB inquiries concerning the report, plaintiff's listing was changed from academically qualified to academically unqualified. Plaintiff was unaware of the change at the time.

Finally, in April 2001, plaintiff received a below criteria in both teaching and research. In August 2001, plaintiff filed another grievance and once again requested that St. Pierre provide plaintiff with the criteria used to evaluate faculty. Defendants Colton and Turkel from the AAUP were assigned to handle the grievance. In October 2001, the Executive Council of the University upheld plaintiff's grievance. The AAUP settled the grievance which resulted in a change in the evaluation sys-

tem for the accounting department. However, plaintiff's performance evaluation was never changed. On December 31, 2001, plaintiff retired from the University.

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

## IV. DISCUSSION

### A. Plaintiff's § 1983 First Amendment Retaliation Claims

In counts I and II of his complaint, plaintiff alleges that University Defendants violated § 1983 when they retaliated against him for exercising his First Amendment rights.[1] Plaintiff contends that the retaliation was a result of his speaking out against St. Pierre's "office auction" to the administration.

---

1. The University of Delaware receives state funding and is therefore considered a public employer subject to the provisions of 42 U.S.C. § 1983.

█ A public employee's retaliation claim for engaging in protected speech must be evaluated under a three-step process. *Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996); *Trotman v. Board of Trustees,* 635 F.2d 216, 224 (3d Cir.1980). First, a plaintiff must establish that the speech in question was protected. *See Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993). For this purpose, the speech must involve a matter of public concern. *See Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the speech is of public concern, a plaintiff must demonstrate that his interest as a citizen in commenting on matters of public concern outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. *See Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). These determinations are questions of law for the court. *See Azzaro v. County of Allegheny,* 110 F.3d 968, 975 (3d Cir.1997).

█ If the court finds that the speech is protected, a plaintiff must show that the speech was a substantial or motivating factor in the alleged retaliatory action taken by the employer. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Finally, the public employer can rebut the claim by demonstrating "by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct." *Id.* The second and third stages of this analysis are questions of fact. *See Green,* 105 F.3d at 889.

University Defendants argue that plaintiff's First Amendment retaliation claims (counts I and II of the complaint) should be dismissed because plaintiff cannot show his speech was protected. (D.I. 6 at 5) In

particular, University Defendants contend that plaintiff's speech does not address a matter of public concern. (*Id.* at 6) Rather, plaintiff's complaints were merely regarding "intra-office minutia" and related "solely to mundane employment grievances." (*Id.* at 7) *See Sanguigni v. Pittsburgh Bd. of Pub. Ed.,* 968 F.2d 393, 397–99 (3d Cir.1992).

Plaintiff argues that his speech was a matter of public concern in that it "sought to inform the University of a breach of trust on the part of the Department Chair." (D.I. 10 at 13) He asserts that members of the department were being forced to contribute to a fund which was under St. Pierre's sole control. Thus, he addressed his comments to the administration to "reach an audience that could provide redress for the serious issues he raised." (*Id.* at 14) Finally, as an aside, plaintiff requests that if his complaint is deficient in some respect, he be allowed to amend it.

In analyzing whether an employee's speech addresses public concern, a court must determine whether it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. The public concern inquiry is a legal one, to be determined by reference to the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147, 103 S.Ct. 1684. A conclusion that the speech concerns private rather than public matter makes it unnecessary to proceed to a consideration of the employer's interests. *Id.* at 146, 103 S.Ct. 1684.

█ In the case at bar, plaintiff has failed to show that his speech was a matter of public concern. Even accepting all allegations in plaintiff's complaint as true, and construing all inferences in his favor, the court cannot conclude that plaintiff's griev-

ances with the "office auction" were a concern to the public at large as opposed to only the faculty members of the accounting department at the University. In his complaint, plaintiff did not allege that St. Pierre intended to use the funds raised from the auction in an improper or illegal manner. Nor did plaintiff identify how the auction would be of concern to anyone outside the department, since public funds were not involved. Instead, plaintiff cites a string of cases that are clearly distinguishable from the facts of this case.[2] In each of the cases cited by plaintiff, the party's speech was in a highly public forum and/or involved allegations of serious wrongdoing or illegality.

University Defendants cite *Sanguigni,* which the court finds more applicable to the case at bar. In *Sanguigni,* the Third Circuit affirmed a district court's dismissal of a First Amendment retaliation claim where a tenured teacher expressed concern in a school newsletter about a "pattern of harassment, oppression and retaliation that exists in the school" by the principal and vice principal. *Sanguigni,* 968 F.2d at 396. The court held that these statements did not relate to a matter of public concern since the plaintiff did not comment on any broad social or policy issue or how the school authorities were spending the taxpayers' money. *Id.* at 399. Furthermore, her comments were not made as part of judicial or administrative proceedings, nor did she raise any policy issue or allege any violations of laws. *Id.* Rather, her statements focused solely on employee morale. *Id.* This court finds the *Sanguigni* case instructive and

concludes that its reasoning is applicable to the case at bar. As such, University Defendants' motion to dismiss with respect to plaintiff's § 1983 First Amendment retaliation claim (counts I and II of the complaint) is granted.

### B. Plaintiff's § 1983 Due Process Claim

■ In count III of his complaint, plaintiff alleges another § 1983 claim, namely, that University Defendants violated his due process rights under the Fourteenth Amendment. In order for plaintiff to prevail on a due process claim arising out of his termination from employment, he must first demonstrate that the acts and omissions of University Defendants constituted "termination" such that his due process rights were triggered. *Barkauskie v. Indian River Sch. Dist.,* 951 F.Supp. 519, 529 (D.Del.1996). Because plaintiff resigned voluntarily, he can only prevail on this point under a "constructive termination" theory. *Id.* Next, plaintiff must demonstrate that the grievance procedure afforded faculty members of the University does not satisfy "due process" within the meaning of the Due Process Clause. *Id.* Where a discharged public employee is given notice of the charges, an adequate explanation of the evidence, and an adequate opportunity to present his side of the story, his due process rights are not violated. *McDaniels v. Flick,* 59 F.3d 446 (3d Cir. 1995).

### 1. Constructive discharge

■ The Third Circuit employs an objective test to determine whether an em-

---

2. *See e.g., Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (comments related to an assassination attempt on the life of the President of the United States); *Zamboni v. Stamler,* 847 F.2d 73 (3d Cir. 1988) (public allegations that the county prosecutor, the county's highest law enforcement official, had circumvented civil service laws and impermissibly abused his power.); *Trotman v. Board of Trustees,* 635 F.2d 216 (3d Cir.1980) (comments in the media and to the Governor related to University-wide policies of the University President).

ployee is constructively discharged. *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir.1984). Under this test, "no finding of specific intent on the part of the employer to bring about a discharge is required for application of the constructive discharge doctrine." *Id.* at 888. To prove constructive discharge, plaintiff must show that the conduct complained of would have the foreseeable result of creating working conditions so unpleasant or difficult that a reasonable person in the employee's position would resign. *Schafer v. Board of Pub. Educ.*, 903 F.2d 243, 249 (3d Cir. 1990).

■ Accepting all allegations in plaintiff's complaint as true and construing all inferences in his favor, the court concludes that plaintiff has sufficiently demonstrated that he was constructively discharged from his position. In his complaint, plaintiff alleges he was unjustly given sub-par teaching evaluations which were publicly disclosed to the other members of the faculty, berated by St. Pierre, removed as Chair of the Department of Promotion and Tenure, relegated to teaching freshman level courses, not given credit for being overloaded with courses, and listed as academically unqualified in Department paperwork. (Complaint ¶¶ 35, 45, 47, 49, 51, 52, 58) The court concludes, and University Defendants concede in their brief, that these factors, when accepted as true, are sufficient to show that a reasonable person in the employee's position would resign. (*See* D.I. 6 at 9)

## 2. Due process of the grievance procedure

University Defendants focus their arguments on the claim that plaintiff cannot show that the grievance procedure in place at the University did not satisfy due process requirements. (D.I. 6 at 9) University Defendants contend that only allega-

tions of denial of due process that occurred within a two-year period prior to filing the complaint are relevant since the statute of limitations for § 1983 claims is two years in Delaware. *See* 10 Del. C. § 8119.

Next, they argue that since April 29, 2002, plaintiff does not allege a single incident where he was not informed of a "charge" and given an opportunity to present his side, via the grievance procedure or otherwise. University Defendants assert that due process in the period prior to termination requires only notice of the charges and an opportunity to respond and these two requirement were both met by the University Defendants at all times during the period in question. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In fact, plaintiff frequently utilized the grievance process and his arguments now are essentially related to his discontent with the results not the procedures. Therefore, plaintiff does not allege any facts that would trigger a due process violation.

Plaintiff makes a number of arguments why his § 1983 due process claim should survive a motion to dismiss. First, plaintiff cites the liberal pleading standards language of Fed.R.Civ.P. 8(a) to deflect any argument that he failed to plead sufficient facts in his complaint to sustain a due process claim. (D.I. 10 at 15) Plaintiff requests that if the court does find he failed to adequately plead a due process claim, he be given leave to amend his complaint. This argument is irrelevant and unpersuasive for two reasons. First, a motion to amend has not been properly put before the court by the parties at the present time. Second, the court concludes that it has all the necessary facts before it to decide the motion.

■ Plaintiff then argues that its allegations are sufficient to make out a viola-

tion of due process claim. In support of this argument, plaintiff asserts that even after filing his grievances, University Defendants never provided him with the criteria for evaluating faculty. Additionally, defendants Turkel and Colton, plaintiff's AAUP representatives, received undisclosed salary adjustments from the University during his grievance process. Additionally, plaintiff alleges that although the University provided a detailed grievance procedure, that procedure was not adequately followed. Finally plaintiff argues that University Defendants' pattern of conduct was a continuing violation and, therefore, instances of violations should be permitted to relate back to prior to April 29, 2002, under the continuing violation doctrine.

Accepting all of plaintiff's allegations as true and construing all inferences in his favor, the court concludes that dismissal would be improper at this stage of the proceedings. Plaintiff has alleged that, although he utilized the grievance procedure in place at the University, the procedures were not properly followed. Furthermore, without being provided the criteria under which the faculty were evaluated, he was not given an adequate explanation of the evidence against him and, consequently, did not have an adequate opportunity to explain his side. Additionally, plaintiff appears to infer that the University's salary increases to his AAUP representatives during the grievance procedure may have affected their ability to impartially represent him.

While these allegations may prove to be unjustified at a later stage of these proceedings, they are sufficient to survive a motion to dismiss. Since the court concludes that there were sufficient acts after April 29, 2000, to survive a motion for dismissal, it need not address the parties' continuing violation doctrine arguments at

this time. For the reasons stated above, defendants' motion to dismiss with respect to plaintiff's § 1983 Due Process claim (count III of the complaint) is denied.

## C. Plaintiff's Breach of Contract Claim

■ In count VI of his complaint, plaintiff alleges that all defendants breached the CBA which, as an employment contract between plaintiff and defendants, constitutes a common law breach of contract. University Defendants argue that § 301 of the Labor Management Relations Act ("LMRA") preempts the claim. The LMRA provides exclusive federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). They also argue that, even if plaintiff's claim is construed under the LMRA, it still fails since he never exhausted his contractual remedies under the CBA prior to bringing this suit, as required by the LMRA. University Defendants also argue that if the court construes the claim under the LMRA, it is barred under the Act's six-month statute of limitations. They assert that plaintiff's most recent allegation of wrongdoing was on or about October 4, 2001 and, therefore, plaintiff's April 29, 2002 filing of this action is well outside the six-month limit.

In response, plaintiff concedes that the LMRA preempts any state law breach of contract claim. However, he argues that the claim should not be dismissed because he did exhaust his remedies under the CBA and, therefore, should be permitted to proceed with the LMRA claim now. In the alternative, plaintiff argues that even if the court finds he did not exhaust his remedies under the CBA, an exception to the exhaustion rule applies when a union breaches its statutory duty of fair representation. In this case, plaintiff argues that his AAUP representatives breached

their fiduciary duties to him and provided inadequate representation. Therefore, the LMRA claim should be allowed to proceed regardless of the exhaustion requirement. Finally, plaintiff argues that the six-month statute of limitations may not have tolled because the date the October 2001 grievance was finally settled is still unknown. Only through discovery will plaintiff know when the six-months began to run.

The court concludes that plaintiff never pled an LMRA claim and the LMRA preempts any common law breach of contract claim. Therefore, plaintiff's common law breach of contract claim (count VI of the complaint) shall be dismissed as to all defendants. As the time to amend the pleadings has not yet expired, plaintiff may choose to reevaluate his LMRA claim and file a motion to amend his complaint to add the claim. However, such a motion is not presently before the court.

### D. Plaintiff's Defamation Claim

In count VII of his complaint, plaintiff alleges that the University Defendants defamed him by listing him as academically unqualified in an application for reaffirmation submitted to the AACSB. He asserts that this statement was knowingly false when made by University Defendants and has caused him damage.

To state a cause of action for defamation under Delaware state law, plaintiff must plead five elements: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury. *Read v. Carpenter*, 1995 WL 945544, *2 (June 8, 1995). Defamation in Delaware consists of the twin torts of libel and slander; in the shortest terms, libel is written defamation, and slander is oral defamation. *Spence v. Allison J. Funk and Communications Consultants, Inc.*, 396 A.2d 967, 970 (1978). In this case, plaintiff is alleging libel.

Libel itself consists of a false and defamatory statement of fact concerning the plaintiff made in an unprivileged publication to a third party. *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del.1998). A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Spence*, 396 A.2d at 969. "In the context of a motion to dismiss a libel suit, it is for the court to determine as a matter of law whether the allegedly defamatory statements are protected expressions of opinion, and whether statements of fact are susceptible of a defamatory meaning." *Ramunno*, 705 A.2d at 1035, n. 14.

Even if a statement is found to be defamatory, liability will not attach unless a plaintiff establishes an unprivileged communication of the statement to a third party. *Henry v. Delaware Law Sch.*, 1998 WL 15897, *10 (Jan. 8, 1998). A qualified privilege "extends to communications made between persons who have a common interest for the protection of which the allegedly defamatory statements are made." *Pierce v. Burns*, 185 A.2d 477, 479 (1962) (citing Restatement (Second) of Torts § 593). Additionally, the qualified privilege protects statements disclosed to any person who has a legitimate expectation in the subject matter. *Burr v. Atlantic Aviation*, 332 A.2d 154, 155 (1974), *rev'd* on other grounds, 348 A.2d 179 (1975). However, a qualified privilege must be exercised "with good faith, without malice and absent any knowledge of falsity or desire to cause harm." *Burr*, 348 A.2d at 181. The benefit of the qualified privilege may be forfeited if it is abused. *See Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (1982). The qualified privilege may be abused by:

(1) excessive or improper publication; (2) the use of the occasion for a purpose not embraced within the privilege; or (3) making a statement which the speaker knows is false. *Id.*

■ University Defendants argue that the statement complained about by plaintiff was made in the context of the employment relationship and concerned his academic qualifications and his ability to perform his job. Therefore, the statement is within the bounds of the qualified privilege. Additionally, University Defendants argue that plaintiff has not alleged sufficient facts showing that they abused the privilege.

Plaintiff argues that the statement in the reaffirmation report listing him as "academically unqualified" falls within the categories of defamation which are actionable. Next, he argues that University Defendants are not entitled to a qualified privilege for the statement because it was not made regarding the employer-employee relationship but, rather, merely in an application for reaffirmation to the AACSB. Alternatively, even if University Defendants are entitled to the privilege, plaintiff asserts that they abused the privilege by submitting a knowingly false statement with malicious intent. Furthermore, plaintiff argues that University Defendants excessively and improperly published the statement since the report to the AACSB was available to the academic community at large.

Construing the facts in favor of plaintiff and assuming his allegations are true, the court concludes that listing plaintiff as "academically unqualified" may have a defamatory meaning in that it would tend to harm the reputation of plaintiff in the community or to deter third persons from associating or dealing with him. *See Spence*, 396 A.2d at 969. However, given the context of the communication, the court also concludes that the statement is subject to qualified privilege. It was made to a university accreditation board for purposes of accreditation review.

■ Although the court finds the statement was privileged, the question of whether a privilege has been abused by malice or intent to harm ordinarily is a factual question for the jury. *Pierce*, 185 A.2d at 479. The fact that University Defendants originally listed plaintiff as "academically qualified" and then, without explanation, changed the listing to "academically unqualified," coupled with the fact that plaintiff alleges this statement was knowingly false, raises questions of fact not amenable to resolution through a motion to dismiss. Therefore, with respect to plaintiff's defamation claim (count VII of the complaint), University Defendants' motion is denied.

## V. CONCLUSION

For the reasons stated, University Defendants' motion to dismiss (D.I.5) is granted in part and denied in part. Plaintiff's motion for leave to file sur reply to defendants' reply brief is granted. An appropriate order shall issue.

### ORDER

At Wilmington this 16th day of January, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. The motion to dismiss filed by defendants The University of Delaware and Kent St. Pierre ("the University Defendants") (D.I.5) with respect to plaintiff's § 1983 First Amendment retaliation claim (counts I and II of the complaint) is granted.

2. University Defendants' motion to dismiss (D.I.5) with respect to plaintiff's

§ 1983 Due Process claim (count III of the complaint) is denied.

3. University Defendants' motion to dismiss (D.I.5) with respect to plaintiff's common law breach of contract claim (count VI of the complaint) is granted.

4. University Defendants' motion to dismiss (D.I.5) with respect to plaintiff's defamation claim (count VII of the complaint) is denied.

5. Plaintiff's motion for leave to file sur reply to defendants' reply brief (D.I.13) is granted.