**J. Allan BICKLING, Plaintiff,**

v.

**KENT GENERAL HOSPITAL, INC., a Delaware corporation, and Dennis E. Klima, Defendants.**

**Civ. A. No. 93–334 MMS.**

United States District Court,
D. Delaware.

Dec. 30, 1994.

William A. Denman, of Schmittinger & Rodriguez, P.A., Dover, DE, for plaintiff.

Mason E. Turner, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, for defendants.

*OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## I. Introduction

Plaintiff J. Allan Bickling, a citizen of Maryland, brings this action against defendants Kent General Hospital, a Delaware corporation, and Dennis E. Klima, a citizen of Delaware. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). In Count I of his complaint, plaintiff alleges that Kent General Hospital terminated his employment in breach of an employment contract between Kent General Hospital and plaintiff. In Counts II and III of his complaint, plaintiff seeks to recover from both defendants under theories of defamation and intentional infliction of emotional distress. Defendants collectively seek summary judgment with regard to Count II and Count III, paragraph 33(k), of plaintiff's complaint. For the reasons that follow, the Court will grant defendants' summary judgment motion.

## II. Background

On January 2, 1991, plaintiff Bickling and defendant Kent General Hospital ("Kent General") executed an employment contract by which Kent General agreed to employ plaintiff as the Hospital's Executive Vice President. Docket Item ("D.I.") 1, ¶ 5; D.I. 26, ¶ 5. The employment contract established plaintiff's responsibilities as Executive Vice President of Kent General Hospital, plaintiff's salary and benefits, plaintiff's term of employment, and the requirements and procedures necessary to terminate plaintiff prior to the expiration of this term of employment. *See* D.I. 1, Ex. A. On May 12, 1992, Kent General and plaintiff amended the contract to provide additional compensation to plaintiff in exchange for an extended term of plaintiff's employment. *See* D.I. 1, Ex. B.

On August 21, 1992, defendant Klima, in his capacity as President of Kent General, terminated plaintiff for "disruption and impairment of the orderly operation of the hospital during the past week and by materially failing to perform appropriate duties and responsibilities assigned to you." D.I. 46, at AA–55 (letter from Dennis E. Klima to J. Allan Bickling, dated August 21, 1992); D.I. 1, ¶ 18; D.I. 26, ¶ 18. Plaintiff and defendants do not agree on the events referenced in this letter or the conclusions to be drawn from those events. This dispute lies at the core of plaintiff's breach of contract action. *See* D.I. 1 at ¶¶ 21–24 (Count I); D.I. 26, ¶¶ 21–24.

Plaintiff's defamation and intentional infliction of emotional distress claims also stem from these events. In Count II, plaintiff alleges that Klima, in his capacity as a repre-

sentative of Kent General, made false statements concerning the events leading up to plaintiff's discharge and that these statements injured plaintiff's reputation as a health care administrator and plaintiff's ability to secure employment in the health care field. D.I. 1, ¶¶ 26–31. In Count III, paragraph 33(k), plaintiff alleges that Klima, again in his capacity as a representative of Kent General, intentionally made statements to other hospital administrators that implied plaintiff was insubordinate, thereby causing plaintiff to suffer severe emotional distress. D.I. 1, ¶ 33(k). Defendants deny that Klima communicated any defamatory statements concerning the plaintiff, and, in the alternative, assert that a qualified privilege protects any statements made by Klima in relation to plaintiff's discharge. D.I. 26, ¶¶ 26–31, 33(k), 37–39.

Following discovery, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. D.I. 41. Defendants argue that insufficient evidence exists to support plaintiff's allegations of defamation and the portion of plaintiff's intentional infliction of emotional distress claim stemming from Klima's allegedly defamatory statements. D.I. 42. Defendants also argue that, even if the Court concludes defendants defamed plaintiff, Klima's statements would fall within Delaware's qualified privilege protecting statements relating to the employer-employee relationship and, therefore, that these statements cannot give rise to liability. D.I. 47 at 4–5.

In response to defendants' motion for summary judgment, plaintiff points to four defamatory statements, or classes of defamatory statements, allegedly made by Klima. First, plaintiff asserts that Klima published defamatory statements to Edward Hancock, President of Nanticoke Hospital in Seaford, Delaware. D.I. 45 at 13. Second, plaintiff asserts that Klima published defamatory statements to persons interviewing for plaintiff's former job at Kent General. D.I. 45 at 12–13. Third, plaintiff asserts that Klima published defamatory statements to Podge Reed of the American Hospital Association during a discussion about his efforts to re-cruit a new chief operating officer. D.I. 45 at 13.

Lastly, plaintiff asserts defendants are chargeable for defamation stemming from plaintiff's own publication of statements originally made by Klima. D.I. 45 at 13. This theory of recovery, termed "compelled self-publication," rejects the traditional mantra that a plaintiff cannot recover for his own publication of defamatory statements, reasoning that, at least in the employment context, the defendant knew plaintiff would be compelled to repeat the defamatory statements to prospective future employers. *See,* *e.g., Lewis v. Equitable Life Assurance Soc'y of the United States,* 389 N.W.2d 876, 886–88 (Minn.1986). The Court will address each of plaintiff's recovery theories in turn.

### III. Analysis

### A. *Summary Judgment*

 Federal Rule of Civil Procedure 56(c) requires courts to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are those which, under the governing substantive law, might affect the outcome of the suit. *Id.; Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 1000 (3d Cir.1994).

 The party moving for summary judgment bears the initial burden to demonstrate the absence of genuine issues of material fact, regardless of which party has the burden of persuasion at trial. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (in banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must "show[ ] that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry

the nonmovant's burden of proof at trial." *Id.* In other words, the moving party is not required to negate the nonmovant's claim, but instead must only point out the lack of evidence supporting the nonmovant's claim. *Country Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061 (3d Cir.1991). In contrast, when the moving party bears the burden of persuasion at trial, the moving party must point to evidence in the record that supports the movant's version of all material facts and demonstrates the absence of any genuine issue of material fact. *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). If the moving party does not meet this standard, the court must deny the motion for summary judgment, even if the nonmoving party does not present opposing evidentiary materials. *Id.*

If the movant meets her initial burden, then the non-moving party must "counter with evidence that demonstrates a genuine issue of [material] fact." *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The nonmoving party may rely on "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," to designate " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

To determine whether a genuine issue for trial exists, the court evaluates whether the record could lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To that end, however, the court does not resolve factual disputes or make credibility determinations. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d at 1363; *see also id.* ("It thus remains the province of the factfinder to ascertain believability and weight of the evidence"). Instead, where the nonmoving party's evidence contradicts the movant's, the court presumes that the nonmoving party's

evidence is correct. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, —, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Pastore v. Bell Telephone Co.,* 24 F.3d 508, 512 (3d Cir.1994). Finally, as the court decides whether the record could lead the trier of fact to find for the nonmoving party, the court must resolve factual inferences that arise from the submitted evidence in the light most favorable to the nonmovant. *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## B. *Choice of Law*

When the jurisdiction of a federal court is predicated on 28 U.S.C. § 1332, the court must apply the substantive law, including the choice of law provisions of the state in which the federal court sits. *Carrick v. Zurich–American Ins. Group,* 14 F.3d 907, 909 (3d Cir.1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Accordingly, this Court must apply Delaware's choice of law rules to determine the substantive law that governs the dispute between Bickling and the defendants.

To resolve choice of law issues in tort actions, Delaware adheres to the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 47 (Del.1991). While no Delaware state court has applied the Restatement to a defamation action, this Court finds that the Delaware Supreme Court, if faced with this issue, would apply the Restatement to make its choice of law decision in this case. *See id.* (noting the Restatement (Second) of Conflict of Laws applies generally to tort actions).

According to the Restatement, the state of the location of publication supplies the substantive law governing a defamation action, unless some other state has a more significant relationship to the occurrence and the parties than the state in which publication occurred. Restatement (Second) of Conflict of Laws § 149. Whether a state other than

the state of publication has a more significant relation to the occurrence and the parties is evaluated under Restatement § 6, which instructs the court to consider:

(a) the needs of the interstate ... system[ ],

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.,* § 6.

█ The Court concludes that the Delaware Supreme Court would apply Delaware law to each of the plaintiff's four allegations of slander. Mr. Klima's statements to Mr. Hancock and the Kent General interviewees fall squarely within § 149. Mr. Klima published the statements in Delaware and the alleged injury to plaintiff occurred in Delaware. No § 6 factor points to a state with a more significant relationship to these alleged defamatory statements. The Court holds that Delaware law applies to these statements.

In contrast, the record does not reflect the location of Klima's publication of the statements to Mr. Reed. While reserving final decision as to the choice of law for this statement, the Court applies Restatement § 6 to determine which state has the most significant relationship to the occurrence and the parties. Under Restatement § 6, the Court finds that § 6(g) sanctions the application of Delaware law to this issue. *See id.* § 6(g) (the Court should consider the "ease in the determination and application of the law to be applied"). Following the same reasoning, the Court will apply Delaware law to plaintiff's allegations of intentional infliction of emotional distress contained in Count III, paragraph 33(k).

█ Plaintiff's republication theory presents a thornier issue, in part because the state's law selected by the choice of law analysis will dictate whether or not the cause of action itself exists. The touchstone, again, under § 149, is the location where publication occurred, and publication could have occurred either when Mr. Klima made the original statement to plaintiff or when plaintiff repeated the statement to prospective employers. The Court concludes that, for choice of law purposes, publication occurred when the defendant first made the alleged defamatory statements to the plaintiff in Delaware. The Court reaches this conclusion because the conduct to which defendants' liability attaches was Klima's original communication to the plaintiff. At this time, defendants knew or should have known that, in the parlance of compelled self-publication, plaintiff would be compelled to repeat the defamatory statements to prospective employers.[1]

---

1. Even if the Court were to determine that publication occurred when plaintiff repeated defendants' statements in other states, the Court would conclude that Restatement § 6 indicates Delaware has a more significant relationship to the occurrence and the parties than the states where plaintiff repeated the defamatory statements. Specifically, subparts (b), (d), (e), (f), and (g) point to Delaware. These five subparts all turn on the balance struck by Delaware in formulating the right of recovery in defamation and the tort's basic defenses. *See infra* page 1307 (discussing Delaware policy concerns giving rise to defamation privileges). With compelled self-publication, Delaware has a strong interest in protecting the defendants' free communication because that speech, at least, occurred in Delaware. *Id.* at § 6(b). The defendants, likewise, had a justified expectation to be governed by

Delaware law when the original statements were made to plaintiff. *Id.* at § 6(d). The balance struck between the defamation action and its defenses would be thrown askew if liability attached under a state's law different than that where the original speech occurred. *Id.* at § 6(e). Further, certainty, predictability, and uniformity of result point to Delaware, as the defendants would otherwise have different states' laws governing their liability, depending on where the plaintiff chose to repeat the statements. *Id.* at § 6(e). Similarly, this could lead to different legal consequences for words uttered only once, in a single location, by the defendants. *Id.* Finally, but not least, ease in the determination and application of the law points to Delaware because, otherwise, the Court would be faced with determining whether or not each of the states where plaintiff repeated defendants'

## C. The Law of Defamation in Delaware

### 1. The Plaintiff's Prima Facie Case

The law of defamation balances two competing societal interests—protecting the individual's reputation and encouraging free and open communication. *Spence v. Funk*, 396 A.2d 967, 969 (Del.1978). With this balance in mind, the elements of a defamation claim in Delaware are (1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury to the plaintiff. Restatement (Second) of Torts, § 558 (1977); *Gonzalez v. Avon Prod., Inc.*, 609 F.Supp. 1555, 1558 (D.Del.1985); *see also id.* (noting that Delaware courts rely on the Restatement (Second) of Torts as an authoritative source on Delaware's law of defamation). Defendants contend that plaintiff cannot establish a prima facie case of defamation because no evidence exists that defendants communicated defamatory statements to any third person. Defendants' motion therefore implicates two elements on which plaintiff will bear the burden of proof at trial—whether Klima communicated statements to third persons and whether those statements were defamatory in character.

The Delaware Supreme Court has defined a defamatory statement as one that " 'tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him,' " *Spence v. Funk*, 396 A.2d at 969 (quoting Prosser *Law of Torts* § 111 at 739 (1971)), or as one that " 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him,' " *id.*, (quoting Restatement (Second) of Torts § 559

(1977)). *See also Andres v. Williams*, 405 A.2d 121, 122 (Del.1979) (same). Whether a statement is capable of bearing a particular meaning, and whether that meaning is defamatory, is a question for the court, *id.;* whether a communication, capable of defamatory meaning as a matter of law, is in fact defamatory is a question for the factfinder, Restatement (Second) of Torts § 614.

### 2. Balancing the Action—The Defense of Privilege

The societal balance that sanctions the defamation action also provides the defense of privilege to ensure that communications society deems of greater importance than the individual's right to enjoy his reputation remain free and encouraged. *Spence v. Funk*, 396 A.2d 967, 969 (Del.1978); *see also Barker v. Huang*, 610 A.2d 1341, 1344 (Del.1992) ("affirmative defenses ... exist for statements made in certain contexts where there is a particular public interest in unchilled freedom of expression"). Delaware recognizes a qualified privilege where the defamatory communication occurs between two parties "who have a common interest for the protection of which the allegedly defamatory communications are made." *Pierce v. Burns*, 55 Del. 166, 185 A.2d 477, 479 (Del. 1962). Included within this "common interest" privilege are "[c]ommunications with respect to the character or qualifications of an employee or former employee ... made to any person who has a legitimate interest in the subject matter." *Burr v. Atlantic Aviation Corp.*, 332 A.2d 154, 155 (Del.Super.Ct.1974), *aff'd in part, rev'd on other grounds*, 348 A.2d 179 (Del.1975); *see also Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del.Super.Ct.1982) (holding that a qualified privilege is "particularly germane to the employer-employee relationship"). The question of whether or not a privilege attaches to a given communication is a question for the

statements recognized the tort of compelled self-publication. *Id.* at § 6(g). This presents considerable difficulty because a significant number of states have not addressed the existence of this theory. Additionally, even if the law of the states of republication were easily determinable, § 6(g) would point to Delaware law so that the Court would not have to apply the different laws that

correlate to each of instances of republication. Sections 6(a) and (c) provide little or no insight into this issue. From the totality of these factors, the Court concludes that Restatement § 6 indicates Delaware, not a different state, has the most significant relationship to the occurrence and parties in this case.

court to determine as a matter of law. *Pierce v. Burns,* 185 A.2d at 480.

■■■■ Although the qualified privilege will generally attach to a communication involving the character or qualifications of the employee, the employer will lose the benefit of this privilege if the employer abuses it. *Id.* at 479. Abuse of the privilege can occur when the statements are made "with an improper motive" or when the statements are made with actual malice. *Id.* at 480. Loss of the privilege by reason of an improper motive occurs with "excessive or improper publication, by the use of the occasion for a purpose not embraced within the privilege, or by the making of a statement which the speaker knows is false." *Id.* at 479. Loss of the privilege by actual malice occurs when the statement is made "with actual ill will toward the object of the statement." *Id.* at 480; *see also Battista v. Chrysler Corp.,* 454 A.2d at 291 ("[a]bsent a finding of express malice, the privilege, if not abused, defeats the action"). To show express malice, the plaintiff must show "that the statements were made primarily to further interests other than those protected by the qualified privilege and that the chief motive ... was the defendant's ill will." *Id.* Furthermore, "the mere addition of the fact that a defendant feels indignation toward plaintiff and enjoys making such statements" does not constitute actual malice. *Id.* The question of whether or not the employer has lost the benefit of the privilege is a factual question for the jury, *Burr v. Atlantic Aviation Corp.,* 348 A.2d 179, 181 (Del.1975); *Pierce v. Burns,* 185 A.2d at 480, and the plaintiff has the burden to establish abuse of the privilege, *Battista v. Chrysler Corp.,* 454 A.2d at 291.

## D. Plaintiff's Allegations of Defamation

In their summary judgment motion, defendants contend the evidentiary materials of record submitted by plaintiff are insufficient to carry plaintiff's burden of persuasion at trial to show defamatory meaning and publication. D.I. 42. Defendants also contend that even if plaintiff meets his summary judgment burdens with respect to defamatory meaning and publication, a qualified privilege attaches, and plaintiff has failed to meet

his burden of pointing to evidentiary materials that demonstrate a loss or abuse of the privilege. D.I. 47.

### 1. Statements to Hancock

■■■ In response to defendants' summary judgment motion, plaintiff first points to deposition testimony describing communications by defendant Klima to Edward Hancock, President of Nanticoke Hospital in Seaford, Delaware. According to plaintiff, Hancock informed him that Klima had stated "[Bickling was] trying to usurp ... [my] position at the organization so that ... [he] could become the president of the hospital." D.I. 44 at A13. Hancock recalls his conversation with Klima differently, remembering that Klima stated "the reason Allen was ultimately terminated was because of relationship problems and he needed to get certain things done that he couldn't get done." D.I. 46 at AA53–AA54. Klima denies having any discussion with Hancock concerning plaintiff's termination. *Id.* at AA51.

In the context of summary judgment, plaintiff has presented sufficient evidentiary materials to establish a genuine issue of material fact as to publication. Even so, the Court will grant defendants' motion because, as a matter or law, neither plaintiff's nor Hancock's recollection of Klima's statements "rise[s] (or fall[s]) to that level which would 'lower [Bickling] ... in the estimation of the community or deter third persons from associating or dealing with him.'" *Andres v. Williams,* 405 A.2d 121, 122 (Del.1979) (final alteration in original) (citation omitted); *Spence v. Funk,* 396 A.2d 967, 969 (Del.1978). Klima's alleged statements to Hancock are akin to the defendant's statements in *Andres v. Williams.* In *Andres,* the Delaware Supreme Court held that statements asserting the *Andres* plaintiff "did not 'work within the supervisor structure,' that he incurred excessive telephone bills, that he was unavailable ..., that he ... had a conflict of interest, [and that he did not perform job duties] ... do not amount to defamation under our law." *Andres v. Williams,* 405 A.2d at 122. Because the Court holds that Klima's alleged statements to Hancock are not defamatory as a matter of law, the Court will grant defen-

dants' motion for summary judgment with regard to these statements.

### 2. Statements to Applicants

 Plaintiff next asserts that Klima published defamatory statements to applicants interviewing for plaintiff's former job at Kent General. D.I. 45 at 12–13. Klima recalls discussing communication and "chain of command" issues with these applicants, as well as discussing a letter from Bickling to Klima "that grossly, I [Klima] felt, misrepresented where our discussion really was." D.I. 46 at AA–41. As with Klima's alleged statements to Hancock, discussion of communication and "chain of command" problems does not, as a matter of law, constitute defamation in Delaware. In contrast, Klima's statement that plaintiff had "misrepresented" some issues could be viewed as calling plaintiff a liar and thus is capable of defamatory meaning. Although Klima's statement could also have a non-defamatory meaning, plaintiff has satisfied his summary judgment burden to put forth evidentiary materials "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 The conclusion that an issue of fact exists as to whether the interviewees understood that Klima intended to communicate a defamatory statement does not mean that defendants are not entitled to summary judgment. Defendants argue that a qualified privilege protects Klima's communications to the interviewees because these communications were made "with respect to the character or qualifications of an employee ... to any person who has a legitimate interest in the subject matter." *Burr v. Atlantic Aviation Corp.*, 332 A.2d 154, 155 (Del.Super.Ct.1974), *aff'd in part, rev'd on other grounds*, 348 A.2d 179 (Del.1975). Because the defendants carry the burden of proof to establish the privilege as an affirmative defense, *Barker v. Huang*, 610 A.2d 1341, 1344 (Del.1992), to prevail as the summary judgment movant the defendants must refer to facts in the record that support their version of all material facts, as well as to demon-

strate the absence of genuine issues of material fact. *See supra* text at 1304–1305.

The Court holds that defendants meet this burden. First, Klima's statements to applicants for plaintiff's former position at Kent General refer to the character or qualifications of plaintiff. More importantly, both Klima and the interviewees had a common interest in discussing plaintiff's performance, particularly as Klima's views of plaintiff's performance directly related to the expected performance of the successful applicant. Furthermore, the interviewees had a legitimate interest in learning the facts and circumstances surrounding the departure of plaintiff in order to make an informed decision concerning their prospective employment as well as to learn of the position's history. Finally, plaintiff has only argued that the privilege does not attach to these communications as a matter of law and has not put forth any evidence creating a genuine issue of material fact. D.I. 48 at 2–3. In sum, the Court holds that defendants have established that Klima's statements to interviewees fall within the qualified privilege.

The issue for summary judgment thus narrows to whether Klima abused the qualified privilege. Defendants argue that no record evidence exists to create genuine issue of material fact on abuse of the privilege. D.I. 47 at 5. Because plaintiff holds the burden of proof at trial on abuse of the privilege, plaintiff must come forth with evidence establishing a genuine issue of material fact or suffer entry of summary judgment. Plaintiff asserts that Klima was "very angry" and that Klima "wanted to hurt me." D.I. 48 exh. A. Plaintiff also notes that Klima told a job search consultant that "he [Klima] did not want me [the consultant] to be in touch with Allan Bickling." *Id.* exh B. While this evidence suggests animosity between Klima and plaintiff, it is insufficient for a reasonable factfinder to find that Klima's "misrepresentation" comment was "made primarily to further interests other than those protected by the qualified privilege and that the chief motive ... was the defendant's ill will." *Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del.Super.Ct.1982). Because plaintiff has failed to produce evidence establishing a gen-

uine issue of material fact as to loss of the qualified privilege, the Court will grant defendants' motion with regard to Klima's statements to applicants for plaintiff's former position.

### 3. Statements to Podge Reed

■ Plaintiff also points to testimony by Klima that Klima published statements defaming the plaintiff to Podge Reed of the American Hospital Association. D.I. 45 at 13. Klima testified at deposition that he may have suggested to Podge Reed that the previous person [plaintiff] in the chief operating officer position was "less than forthright" or had "misrepresented" some issues. D.I. 46 at AA44. As with Klima's statements to the interviewees, Klima's statement that plaintiff "misrepresented" some issues and his characterization of plaintiff as "less than forthright" are capable of defamatory meaning, and the Court finds that plaintiff has satisfied his summary judgment burden to put forth evidentiary materials "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Once again, defendants assert that the qualified privilege protects these statements from liability. The statements concern plaintiff's character and qualifications as an employee. Klima testified that he made the statements to Reed in the course "describ[ing] to him why I needed to get really particular [sic] good people" and asking him if he knew of "any search firms that were doing a particularly good job with" filling hospital executive positions, D.I. 46 at AA43; this testimony establishes that Reed had "a legitimate interest in the subject matter," *Burr v. Atlantic Aviation Corp.,* 332 A.2d at 154. Accordingly, the Court holds that defendants have satisfied their summary judgment burden to demonstrate that the qualified privilege attached to these statements. Because plaintiff raises no additional arguments with respect to abuse of the privilege, the Court will grant defendants' motion with respect to Klima's statements to Mr. Reed.

### 4. Compelled Self–Publication

■ Lastly, plaintiff asserts genuine issues of material fact exist with regard to statements Klima originally directed toward the plaintiff and that plaintiff in turn repeated to his prospective employers. To establish the defamatory nature of Klima's statements, plaintiff points to testimony developed at his deposition to the effect that Klima told him he was terminated for "mutinous insubordination." D.I. 46 at AA16. Plaintiff then argues that his repetition of Klima's statement, under a theory of compelled self-publication, satisfies the publication requirement.

Under the theory of compelled self-publication, plaintiff may satisfy the publication requirement by repeating Klima's statement, if Klima had knowledge that the plaintiff was substantially certain to communicate that statement to third parties and if the plaintiff was either compelled to repeat, or foreseeably repeated, the defamatory statements to a third party. *See Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1344–45 (Colo.1988). Plaintiff argues that defendants knew or should have known that plaintiff would have to repeat Klima's statements to prospective employers because Kent General refuses to provide personnel references for former employees. D.I. 46 exh. C. Plaintiff also claims that each of his prospective employers required an explanation of the events surrounding his termination and that, to have a chance to gain employment, plaintiff was compelled to repeat Klima's statements. D.I. 46 at AA15–AA16.

Defendants question whether Klima's statement is defamatory and whether, as a matter of law, plaintiff's repetition of Klima's statements satisfies the publication requirement of Delaware law. Defendants note that in at least one instance the Delaware Superior Court has rejected compelled self-publication as a method to satisfy the prima facie publication requirement under Delaware law. *See Lynch v. Mellon Bank,* No. 90C–JA–125 1992 WL 51880, *3 (Del.Super.Ct. March 12, 1992) (holding that "[a]lthough the concept of self-publication has been accepted in a minority of other jurisdictions, it is not the law in Delaware"). Plaintiff responds that the De-

laware Supreme Court, after analyzing the issue, would follow the lead of the majority of states addressing compelled self-publication and recognize the theory. *See, e.g., Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1343–46 (Colo.1988) (en banc); *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 886–88 (Minn.1986); *Chasewood Constr. Co. v. Rico*, 696 S.W.2d 439, 444–45 (Tex.Ct.App.1985), *appeal refused nre; Neighbors v. Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822, 824–25 (Mo.Ct.App.1985); *Belcher v. Little*, 315 N.W.2d 734, 737–38 (Iowa 1982); *McKinney v. County of Santa Clara*, 110 Cal.App.3d 787, 168 Cal.Rptr. 89, 93–95 (1980); *Grist v. Upjohn Co.*, 16 Mich.App. 452, 168 N.W.2d 389, 405–06 (1969); *Bretz v. Mayer*, 1 Ohio Misc. 59, 203 N.E.2d 665, 668–71 (Ohio Com. Pl.1963); *Colonial Stores, Inc. v. Barrett*, 73 Ga.App. 839, 38 S.E.2d 306, 307–08 (1946); *but see Layne v. Builders Plumbing Supply Co.*, 210 Ill.App.3d 966, 155 Ill.Dec. 493, 499–500, 569 N.E.2d 1104, 1110–11 (1991) (rejecting compelled self-publication); *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022, 1024–25 (1991) (same), *appeal denied*, 529 Pa. 623, 600 A.2d 539 (Pa.1991); *Gore v. Health–Tex, Inc.*, 567 So.2d 1307, 1308–09 (Ala.1990).

Whatever the merits of plaintiff's compelled self-publication theory, the Court need not predict whether the Supreme Court of Delaware would recognize compelled self-publication as the law of Delaware. Assuming, without deciding, that plaintiff has met his summary judgment burden to show publication of a defamatory statement, the Court will grant defendants' motion because Delaware's qualified privilege would apply to the facts of this case as developed on the record and would protect Klima's statements to the plaintiff. *See also Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 889 (Minn.1986) ("the logic of imposing liability upon a former employer in a self-publication case appears to compel recognition of a qualified privilege"); Rodney A. Smolla, *Law of Defamation* § 15.02(3)(c) at 15–13 (release no. 7, 1994). For example, Klima and plaintiff had a common interest in

communications concerning plaintiff's job performance, and plaintiff had a legitimate interest in learning of the reasons for his termination. Communications of this sort lie at the core of qualified privilege in Delaware and should be protected just as a qualified privilege would protect Klima's statements if he had initially communicated them to plaintiff's prospective employers. *Cf. Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del.Super.Ct.1982) (holding internal corporate communications concerning employee terminations protected by the qualified privilege). The Court holds that defendants have met their burden to show that a qualified privilege attaches to Klima's statements to plaintiff. Furthermore, because plaintiff has not put forth any record evidence demonstrating that Klima's statements were made to further interests other than the qualified privilege, that Klima's chief motive in making the statements was ill will towards plaintiff, or that Klima's statements were false, *see* D.I. 48 at 4 (arguing, without pointing to evidentiary material, that Klima's statements were false), the Court will grant defendants motion in regard to plaintiff's compelled self-publication theory.

### E. *Intentional Infliction of Emotional Distress*

Just as defendants challenged the factual bases underlying plaintiff's allegations of defamation in Count II of his complaint, defendants contend that Count III, paragraph 33(k), does not state a prima facie case of intentional infliction of emotional distress because the evidentiary materials of record are insufficient for a reasonable jury to return a verdict for the plaintiff.[2] The Court will grant defendants' motion for summary judgment on Count III, paragraph 33(k), albeit on different grounds than those urged by the defendants, because the facts contained in paragraph 33(k) do not support a claim for intentional infliction of emotional distress under Delaware law. *See Barker v. Huang*, 610 A.2d 1341, 1350–51 (Del.1992).

---

**2.** Defendants have not brought a summary judgment motion on plaintiff's other allegations of

intentional infliction of emotional distress. *See* D.I. 1, ¶¶ 32–33(j); 33(*l*)–35.

In *Barker v. Huang*, the Supreme Court of Delaware held that "an independent action for intentional infliction of emotional distress does not lie where, as here, the gravamen of the complaint sounds in defamation." 610 A.2d at 1351. In reaching this result, the Supreme Court of Delaware reasoned that permitting a cause of action sounding in intentional infliction of emotional distress for the same acts that support a defamation claim would " 'swallow[ ] up and engulf[ ] the whole law of public defamation' " because the defamation defenses would not apply. *Id.* (citing *Grimes v. Carter*, 241 Cal.App.2d 694, 50 Cal.Rptr. 808, 813 (1966) (quoting Prosser)).

Paragraph 33(k) of Count III falls squarely within the rule of *Barker.* The gravamen of paragraph 33(k) sounds in defamation; paragraph 33(k) alleges that "Klima informed administrators at other hospitals that Plaintiff had challenged Klima's authority, implying that Plaintiff was insubordinate." D.I. 1, ¶ 33(k). This allegation attempts to attach liability to the same acts that plaintiff alleges give rise to his defamation claim in Count II. Accordingly, the Court will grant summary judgment for defendants on paragraph 33(k) of plaintiff's complaint. The Court does not reach defendants' contention that no facts exist to support plaintiff's claim in paragraph 33(k).

### V. Conclusion

For the reasons stated above, the Court will grant summary judgment in favor of defendants and against plaintiff on the defamation claims found in Count II of plaintiff's complaint and the intentional infliction of emotional distress claim found in paragraph 33(k) of plaintiff's complaint.