**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

July 27, 2020

Albert M. Greto, Esquire
Greto Law
715 N. Tatnall Street
Wilmington, Delaware 19801

Jeffrey M. Weiner, Esquire
1332 King Street
Wilmington, Delaware 19801

> Re:  *Michael Ciabattoni v. Teamsters Local 326, et al.*,
>       Case No.: N15C-04-059 VLM

Dear Counsel:

This is the Court's ruling on Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment and Defendants' Motion for Summary Judgment. For the following reasons, Plaintiff's Motion to Strike is **DENIED,** and Defendants' Motion for Summary Judgment is **GRANTED, in part,** as to the claim for Intentional Infliction of Emotional Distress, **GRANTED,** as to certain defendants on the Breach of Contract Claim, and **DENIED,** as to all remaining claims.

## I.  Factual and Procedural Background[1]

From January 1, 2000 to November 23, 2012, Plaintiff served as Vice-President of Teamster Local 326. In 2012, Defendant, John Ryan, Jr. ("Ryan"), served as President, and Defendant Joseph Smith ("Smith") served as Treasurer. The offices of President, Vice-President, and Treasurer were up for re-election in November 2012. Both Plaintiff and Defendant Smith intended to run for President.

During this timeframe, allegations arose that Plaintiff had stolen from the Local 326 PAC Fund that resulted in both civil and criminal investigations. On or

---

[1] For the full factual background presented in prior rulings, see *Ciabattoni v. Teamsters Local 326*, 2017 WL 1175665 (Del. Super. Ct. Mar. 28, 2017); *see also Ciabattoni v. Teamsters Local 326*, 2016 WL 4442277 (Del. Super. Ct. Aug. 22, 2016).

1

about August of 2012, Local 326, its Board, and Ryan filed internal administrative charges against Plaintiff with Teamsters Joint Council 53, which covers the Mid-Atlantic area of the United States, including Pennsylvania, New Jersey and Delaware. On November 21, 2012, these charges resolved after the parties reached a settlement agreement. Plaintiff agreed to pay $7,000 to Local 326 for "expense submissions for which there was inadequate backup documentation" and Defendants agreed, "no charges of embezzlement or other financial improprieties [were] warranted . . . ."[2] Defendants agreed to keep the terms of their Agreement confidential.

Plaintiff claims certain Defendants worked with other Philadelphia-based Teamsters in Joint Council 53 to organize FedEx Freight, and that an employee of FedEx Freight worked with affiliates of Defendants to create a Facebook page used by the Teamsters to disseminate union propaganda to further their unionization efforts. In January and February 2015, certain posts about Plaintiff appeared on the Facebook page entitled "Bring the Teamsters to FedEx Freight." Plaintiff claims the statements were defamatory. He claims further that dissemination of his departure from Local 326 was in violation of the Settlement Agreement.

The relevant procedural history includes that on December 20, 2019, Defendants filed a Motion for Summary Judgment and supporting Opening Brief. Plaintiff moved to strike the Opening Brief on the ground that Defendants rely upon documents requested but not produced in discovery. On January 29, 2020, Plaintiff filed his Answer in Opposition to Defendants' Motion for Summary Judgment and supporting Brief in Opposition. Defendants filed their Response in Opposition to Plaintiff's Motion to Strike on January 31, 2020. On March 4, 2020, Plaintiff filed a Third Amended Complaint, the operative complaint in this case.[3] On May 20, 2020, the Court contacted counsel to scheduled oral arguments; both sides indicated none was required. The matter is ripe for review.

---

[2] *See* Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 3 (citing Plaintiff's Second Amended Complaint, Exhibit B) [hereinafter "Pl.'s Brief"].

[3] There, Plaintiff alleges: Count I (False Light Invasion of Privacy); Count II (Defamation of Character); Count III (Tortious Interference With Business Relationship); Count IV (Intentional Infliction of Emotional Distress); Count V (Breach of Contract); Count VI (Civil Conspiracy to Commit the Forgoing Counts); and Count VII (Direct or Vicarious Liability of Teamsters Local 326).

## II.     Plaintiff's Motion to Strike

Plaintiff seeks Defendants' Motion for Summary Judgment be stricken *in its entirety*, claiming Defendants produced approximately 832 pages of new information, and relied upon a vast majority of documents in support of their motion after the discovery cut-off deadline.[4]   Defendants assert that neither Plaintiff's Interrogatories nor his corresponding Request for Production relate to the documents produced by Defendants after the discovery cut-off,[5] and that some documents are new photocopies of documents previously provided within the discovery window.[6]

Granting a Motion to Strike is "permissive, not mandatory, and therefore a Court must exercise its own judgment."[7]   This Court would not strike an entire dispositive motion even where a party relied upon it post-discovery.  Instead, the Court would simply disregard an untimely submission.  However, neither side has identified what documents, if any of the alleged untimely 832 pages, support Defendants' Motion for Summary Judgment so the Court makes no ruling regarding post-discovery submissions, if any.   Therefore, Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment is **DENIED.** [8]

## III.     Defendants' Motion for Summary Judgment

### A. Contention of the Parties

Without any citation to Delaware statutory provisions, Defendants seek summary judgment for the following reasons: (1) Plaintiff has failed to present any evidence that Defendants made the alleged defamatory statements on Facebook, much less that they did so with actual malice; (2) Plaintiff's own expert witness testified there is no vicarious liability in cases of defamation; (3) the First Amendment creates a privilege for the publication of public records; (4) Plaintiff's claims are barred by the truth defense; (5) Teamsters are afforded a qualified privilege as an employer; (6) reasonable persons do not rely upon blogs and chatrooms, such as Facebook, as a source of facts or data; (7) Plaintiff has failed to

---

[4] *See* Plaintiff's Motion to Strike ¶ 4 [hereinafter "Pl.'s Mot."].

[5] *See* Defendants' Response in Opposition to Plaintiff's Motion to Strike ¶ 6 [hereinafter "Def.s' Resp."].

[6] *Id*.

[7] *Topps Chewing Gum, Inc. v. Fleer Corp.*, 1986 WL 538 (Del. Ch. Dec. 12, 1986).

[8] Of course, if either intends to introduce documents into evidence produced post-discovery cut-off, exclusion of the evidence may be appropriate.  These are evidentiary issues best considered through motions *in limine*.

present evidence of damages suffered as a result of the alleged defamation; (8) Plaintiff did not identify any medical expert to substantiate his claims of emotional distress; (9) there is no underlying wrong upon which to premise a civil conspiracy claim; (10) Plaintiff's false light claim is identical to the defamation claim, and is therefore barred on the same grounds; and (11) Plaintiff is barred from recovering for tortious interference with business relationship when it appears his cause of action sounds more in contract such that the aforementioned privilege entitles Defendants to summary judgment.

In response, also without citing to statutory provisions, Plaintiff asserts that: (1) the record contains adequate evidence that Defendants acted with actual malice; (2) Defendants can be held liable for defamation if they share with others defamatory statements from another source, and Plaintiff need only prove Defendants provided the defamatory information to be published by another, not that each Defendant actually published the information; (3) the First Amendment protection used by Defendants does not apply to false, misleading, or defamatory comments about public records; (4) the truth defense is highly factual and does not apply to Defendants; (5) Defendants do not enjoy the conditional privilege of an employer because they acted with malice and a desire to cause harm; (6) FedEx employees relied upon the facts and data posted in the now-deleted Facebook page to make informed decisions unfavorable to Plaintiff; (7) Plaintiff has presented adequate evidence to create a triable issue regarding the extent to which he suffered damages; (8) Defendant(s) conspired with others to engage in defamation, tortious interference with business relations, and breach of contract; (9) Defendants are the most probable source of the defamatory statements regarding Plaintiff because the harmful information and documents were in their hands last; (10) Defendants committed breach of contract when they supplied others with the confidential settlement agreement regarding Plaintiff's employment with Teamsters; and (11) this Court's Order directing Facebook to produce identifying information regarding the Facebook page suggests that a *prima facie* case can been established for submission to a jury.

## B. Standard of Review

Under Superior Court Civil Rule 56, the burden of proof on a Motion for Summary Judgment falls on the moving party to demonstrate that "there is no genuine issues as to any material fact and that the moving party is entitled to

judgment as a matter of law."[9]  If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the "existence of one or more genuine issues of material fact."[10]  Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[11]  In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[12]  However, the Court shall not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[13]

### C. Discussion

The Court addressed the motions in two parts:  (1) defamation claims and (2) non-defamation claims.

### 1.     Defamation Claims

"To defeat a motion for summary judgment, a party must present some evidence, either direct or circumstantial, to support every element of its claim in which a jury reasonably could find for the plaintiff."[14]  Plaintiff has done so for his defamation claims.

Citing to no provision of statutory law and raising generic references to First Amendment protections, Defendants argue the complained-of statements do not meet the definition of "defamatory."  This argument failed on a Motion to Dismiss, and fails again at this stage of the proceedings.  Plaintiff's expert, Charles J. Glasser, Jr., Esquire, a journalist, First Amendment litigator, and an educator specializing in Media Law and Ethics, opines that "Defendants confuse the basic principles of the

---

[9] DEL. SUPER. CT. CIV. R. 56(C).

[10] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3-4 (Del. 1995) (citing SUPER. CT. CIV. R. 56(C); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979); *State v. Regency Group, Inc.*, 598 A.2d 1123, 1129 (Del. Super. 1991)).

[11] *Ebersole v. Lowengrub*, 180 A.2d 467, 469-70 (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

[12] *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Palmer*, 343 A.2d, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. Ct. 1978)).

[13] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986), *aff'd sub. nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

[14] *Prof'l Investigating & Consulting Agency, Inc. v. Hewlett-Packard Co.*, No. CVN12C-06-196MMJCCLD, 2014 WL 4627141, at *6 (Del. Super. Ct. Sept. 3, 2014).

alleged truth of a statement (a matter of fact for a jury) as separate from whether the statement is capable of defamatory meaning."[15]

The Court finds genuine issues of material fact exist as to what constitutes defamation. In the light most favorable to Plaintiff, the Court accepts the Glasser Report; that a determination of truth or falsity of the alleged statements is for the fact-finder. On Plaintiff's vicarious liability claim, there is a factual dispute as to the interpretation and substance of Plaintiff's expert opinion. Defendants' argument that vicarious liability does not exist because an expert opines as much is unpersuasive. Equally unpersuasive are Defendants' arguments that the First Amendment bars the claims. Where Plaintiff expects to also introduce evidence of records that may not have been public, there exist genuine issues of material fact as to what documents would be deemed "public record" to trigger First Amendment protections or bars.

Defendants' argument that Plaintiff's claims are barred by the truth defense is also without merit for the reasons set out in The Glasser Report. Defendants argue that "[t]he statements allegedly posted . . . could not have damaged Ciabattoni's reputation any more than did his own previous behavior, detailed in the Delaware News Journal, Labor Union Report, and HuffPost articles."[16] These arguments are for the jury. Whether Defendants' statements were true cannot be determined from a news source that could have been tainted or based on conjecture or speculation, and remain issues to be addressed by the fact finders.

Defendants' argument that qualified privilege as an employer entitles them to summary judgment is also unpersuasive. Although "Delaware clearly recognizes 'a qualified privilege of employers to make communications regarding the character, qualifications, or job performance of an employee or former employee to those who have a legitimate interest in such information[,]'"[17] an "employer will lose the benefit of this privilege if the employer abuses it."[18] "Abuse of the privilege can occur when the statements are made 'with an improper motive' or when the

---

[15] Plaintiff's Rule 26 Expert Disclosure, Exhibit A at 5-6 (citing *Ro Ran Corp. v. DiStefano*, 1987 WL 12431, (Del. Super. Ct. June 15, 1987)) (holding that while truth is a defense, when there is an ambiguity about whether the statement is defamatory, "[I]t is for the jury, not the court, to determine which of the two interpretations is the proper one.") [hereinafter "The Glasser Report"].

[16] Defendants' Motion for Summary Judgment at 3-4 [hereinafter "Def.s' Mot."].

[17] *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1282 (Del. Super. Ct. 2001) (internal citations omitted)).

[18] *Bickling v. Kent General Hosp., Inc.*, 872 F. Supp. 1299, 1308 (citing *Pierce v. Burns,* 185 A.2d 477, 479 (Del. 1962)).

statements are made with actual malice."[19] "The question of whether or not the employer has lost the benefit of the privilege is a factual question for the jury[.]"[20] For this reason, there remain genuine issues of material fact on whether Defendants lost the benefit of a claimed privilege, if applicable.

Defendants also argue no reasonable person would rely on Facebook as a source of facts or data. The Supreme Court has provided guidance that "[b]logs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely."[21] However, in *Doe v. Cahill*, the Supreme Court also found that although an internet posting may not be a source of fact, it considered whether probative value existed in "the context in which the statements were made."[22] Here, Plaintiff argues contextual evidence exists beyond the statements in the Facebook post that give rise to his claims. In addition to the fact that the Facebook post was deleted/taken down during the pendency of this litigation, the relationship between Plaintiff, Defendants, and other players referenced by Plaintiff remains unclear. In this contextual framework, regardless of the statements themselves, the timing of the Facebook postings in relation to Plaintiff's departure from Local 326 create genuine issues of material fact and may prove probative to the issues in this case.

Defendants next argue for summary judgment where Plaintiff presents no evidence of damages. This is not accurate. Plaintiff's expert, Gregory J. Spadea, provided a forensic accounting report and supplement wherein he sets forth in detail the damages allegedly suffered by Plaintiff, specifically $93,000 in 2015 and $95,000 in 2016 as a result of his termination immediately following the Facebook posts.[23] Therefore, Plaintiff has presented adequate evidence to create a triable issue regarding damages.

---

[19] *Bickling*, 872 F. Supp. At 1308 (quoting *Pierce v. Burns*, 185 A.2d 477, 480 (Del. 1962)). "Loss of the privilege by reason of an improper motive occurs with 'excessive or improper publication, by the use of the occasion for a purpose not embraced within the privilege, or by the making of a statement which the speaker knows is false.'" *Id.* (quoting *Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962)). "Loss of the privilege by actual malice occurs when the statement is made 'with actual ill will toward the object of the statement.'" *Id.* (quoting *Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962)).

[20] *Bickling*, 872 F. Supp. At 1308 (citing *Burr v. Atlantic Aviation Corp.*, 348 A.2d 179, 181 (Del. 1975); *Pierce v. Burns*, 185 A.2d 477, 480 (Del. 1962)).

[21] *Doe v. Cahill*, 884 A.2d 451, 465 (Del. 2005).

[22] *Id.* at 467.

[23] Plaintiff's Rule 26 Expert Disclosure, Exhibit B.

### 2. Non-Defamation Claims

Defendants also seek summary judgment as to the Plaintiff's non-defamation claims: (1) Intentional Infliction of Emotional Distress; (2) Civil Conspiracy; (3) False Light Invasion of Privacy; (4) Tortious Interference; and (5) Breach of Contract. The Court addresses them in order as follows:

#### i. Intentional Infliction of Emotional Distress ("IIED")

Plaintiff failed to identify a medical expert to testify as to his alleged "emotional distress" for his IIED claim. Delaware case law generally holds that medical expert testimony is necessary to establish that emotional distress was proximately caused by the actions of the Defendant.[24] As in *Collins,* this Court does require the production of expert testimony to establish negligent infliction of emotional distress.[25] In discussing *intentional* infliction of emotional distress, although that Court did not discuss requirements surrounding expert medical testimony,[26] in *Doe v. Wildey*, the Court has noted "the necessity of expert testimony to a showing of proximate cause for claims of intentional infliction of emotional distress and contemporaneous mental anguish and emotional distress."[27]

Plaintiff concedes he brings no independent IIED claim, nor does he respond as to how he survives dismissal without an expert to support this claim. This Court agrees that expert testimony is required. "Without expert testimony, it would be difficult for a jury to discern the intensity and duration of distress . . . from distress [a plaintiff] experienced due to other circumstances and events in [his life]."[28] Absent evidence to establish a causal nexus to support this claim, summary judgment in favor of Defendants is appropriate. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's claim for IIED is **GRANTED.**

#### ii. Civil Conspiracy

"[C]ivil conspiracy is not an independent cause of action under Delaware law[,]"[29] and a plaintiff "is required to premise their claim on some underlying

---

[24] *Collins v. African Methodist Episocopal Zion Church*, No. CIV.A. 04C-02-121, 2006 WL 1579718, at *1 (Del. Super. Ct. Mar. 31, 2006).

[25] *See id.* at *6.

[26] *Id.* at *4-*6.

[27] *Doe v. Wildey*, No. CIV.A. 09C-06-262MJB, 2012 WL 1408879, at *4 (Del. Super. Ct. Mar. 29, 2012).

[28] *Id.* at *5.

[29] *Szczerba v. Am. Cigarette Outlet, Inc.*, No. CV N13C-09-080 WCC, 2016 WL 1424561, at *2 (Del. Super. Ct. Apr. 1, 2016) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998) (citing *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del. Super. Ct. 1986))).

wrong such as a tort or other statutory violation."[30]  Defendants argue that Plaintiff's civil conspiracy claim fails because they lack evidentiary support and fail to present any underlying wrongs.  Plaintiff argues the independent torts are defamation, tortious interference with business relations, and breach of contract.  Assuming Plaintiff can establish the elements of these claims to support his civil conspiracy claim, he survives summary judgment at this stage.  The Court will consider a renewed motion for a directed verdict if Plaintiff is unable to meet his burden of proof at trial.

### iii.    False Light Invasion of Privacy

Defendants argue that Plaintiff is a limited public figure and must prove actual malice in order to recover on this claim, and that Plaintiff cannot prove that the documents posted were false to support this claim.  Whether the alleged posts and statements were true, false, or posted with ill intent remain issues of material fact in dispute for the fact-finder.

### iv.    Tortious Interference with Business Relationship

Defendants suggest that because Plaintiff's claim "appears" to be one for "tortious interference with contractual relations,"[31] that the Restatement (Second) Chapter 37 recognizes a privilege existed for Defendants to interfere with such contract.  It is unclear how.  Nevertheless, Defendant rehashes First Amendment arguments and for the same reasons previously mentioned, this Court finds there exist genuine issues of material fact as to whether Defendants abused privilege and/or acted with malice.

### v.    Breach of Contract

Defendants argue there is no evidence that any Defendant posted any documents and/or statements on the Facebook page in question.  Even if it could be established that Defendants were responsible for the postings, certain Defendants named were not parties to the Settlement Agreement.  In considering this argument in a light most favorable to Plaintiff, this Court needs to consider whether genuine issues of material fact exist in regards to considering all elements of breach of contract: (1) whether there was a contractual obligation; (2) whether Defendants breached that obligation; and (3) whether such breach resulted in damage to Plaintiff.[32]  The record is clear that Defendants Paul Thornburg, Paul Bishop, Gene

---

[30] *Id.*

[31] Def.s' Mot. at 33.

[32] *See Tuffield Assocs., Inc. v. Meridian Architects & Engineers, LLC*, No. CIV.A. S10C-03004RFS, 2010 WL 2802409, at *6 (Del. Super. Ct. July 12, 2010) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

Pytko, and John J. Ryan, *Sr.* are not included in the Settlement Agreement.[33] Plaintiffs argue that they are "co-conspirators" with Defendants Smith and McCartney . . . ."[34] With no evidence or case law to support Plaintiff's position, if proceeding on a "co-conspirator" theory, the record is deficient to establish an alternative contract theory against these Defendants. Finding no genuine issue of material fact, summary judgment is granted in favor of these certain defendants on Plaintiff's breach of contract claim.

In considering all facts and reasonable inferences in a light most favorable to Plaintiff, Defendants' Motion for Summary Judgment is **GRANTED,** as to the claim for Intentional Infliction of Emotional Distress, as to certain defendants on the Breach of Contract Claim, and **DENIED,** as to all remaining claims.

**IT SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[33] *See* Plaintiff's Third Amended Complaint, Exhibit B.
[34] *See* Pl.'s Brief at 24.